233 F.Supp. 997 (1962)
TENNESSEE VALLEY AUTHORITY, Plaintiff,
v.
LOCAL UNION NO. 110 OF SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION OF LOUISVILLE, KENTUCKY, as an entity, and all of the members thereof as a class by and through the following officers and members thereof: Walter Rowlett, Jr., president, Carl E. Heckel, recording secretary-financial secretary, Randolph Heyser, business representative, and John H. Rogers, Jr., job steward,
Walter Rowlett, Jr., individually and in his official capacity as president of Local Union No. 110,
Carl E. Heckel, individually and in his official capacity as recording secretary-financial secretary of Local Union No. 110,
Randolph Heyser, individually and in his official capacity as business representative of Local Union No. 110 and
John H. Rogers, Jr., individually and in his official capacity as job steward for Local Union No. 110, Paradise Steam Plant Project, Defendants.
No. 1027.
United States District Court W. D. Kentucky, at Owensboro.
November 14, 1962.
*998 Charles J. McCarthy, Gen. Counsel, Robert H. Marquis, Solicitor, Thomas A. Pedersen, Asst. Gen. Counsel, R. Lynn Seeber, Knoxville, Tenn., for plaintiff.
Charles R. Isenberg, Louisville, Ky., for defendants.
BROOKS, Chief Judge.
This cause came on for hearing before the Court on October 23, 1962, on plaintiff's motion for a preliminary injunction, upon the pleadings and affidavits of plaintiff and oral argument of counsel for plaintiff and defendants, from all of which the Court makes the following determinations:

Findings of Fact
1. Defendants have filed no answer and have not denied or offered testimony in contradiction of any of the matters set out in the verified complaint or the affidavits of Rudolf F. Bertram and George P. Palo filed in support of plaintiff's motion for preliminary injunction.
2. The plaintiff Tennessee Valley Authority (hereinafter called "TVA") is engaged in the construction of a large steam electric generating plant, known as the Paradise Steam Plant, in Muhlenberg County near Paradise, Kentucky.
3. In constructing this plant TVA employs approximately 2,600 construction workers who are members of the various crafts in the building and construction industry.
4. A number of AFL-CIO national or international craft unions, including the Sheet Metal Workers' International Association, have joined together to form the Tennessee Valley Trades and Labor Council (hereinafter called "Council") and the Council has entered into a General Agreement with TVA which establishes the procedures for the determination of wage scales, hours of work, job assignments, adjustment of disputes and grievances, and other matters relating to the employment of TVA's construction workers.
5. Article II-3 of this agreement provides that the Council and its member organizations will not permit their members to engage in work stoppages pending settlement of disputes and that all disputes and grievances will be handled by grievance procedures established therein.
6. Supplements to the General Agreement dated April 21, 1952, and February 27, 1962, provide in part that if on any TVA project a group of employees leaves work in violation of Article II, above, each employee involved must be interviewed individually by a joint committee composed of representatives appointed by TVA and by the Council before returning to work. Their employment status is held in suspense pending these interviews. The February 27, 1962, supplement *999 states that the purpose of these interviews is to:
"(1) determine the cause of the action, (2) determine who was primarily responsible for the action, (3) determine whether and under what condition the employees may return to work, (4) determine what statement if any of the action shall be placed in the employees' personal history record, and (5) decide on appropriate action against individuals found to have participated in instigating the action or who failed in their responsibility to attempt to prevent the action."
7. In June and July 1962, the defendant Randolph Heyser, the business representative of the defendant Local 110 of the Sheet Metal Workers International Association (hereinafter called Local 110), demanded that certain work assigned to other crafts be assigned to the sheet metal workers.
8. On Monday, July 30, 1962, without pursuing the procedures prescribed by the General Agreement, and in violation thereof, all of the 85 sheet metal workers employed by TVA at the Paradise Steam Plant failed to report for work as scheduled. All of these sheet metal workers work under the jurisdiction of Local 110. They did not report for work on Tuesday, July 31, 1962, and on Wednesday, August 1, 1962, Local 110 threw up a picket line at the entrance to the Paradise Steam Plant and maintained this picket line until approximately 11 a. m. on Monday, August 6. Most of TVA's 2,600 construction workers employed at the plant refused to cross the picket line to report for work during this period.
9. In accordance with the General Agreement a joint interview committee consisting of representatives of the Council and TVA was organized and was at the Paradise Steam Plant on Thursday, August 2, for the purpose of interviewing the sheet metal workers. There was a picket line and none of these workers appeared for the interviews on that day. The interview committee was at the Paradise Steam Plant again on Monday, August 6, but there was a picket line until about 11 a. m. and none of the sheet metal workers appeared for interview.
10. On Tuesday, August 7, most of the 85 sheet metal workers reported for interview before a joint committee composed of four representatives of the Council and three representatives of TVA. After these interviews the joint committee unanimously issued the following findings on the same day:
"The Sheet Metal Workers, as a body and in concerted action are guilty of leaving the job in violation of the terms of the General Agreement; as a group they established a picket line for the purpose of keeping employees of other crafts from working; and refused to obey orders from their General President to return to work.
"The Sheet Metal Workers who participated in this action shall not be permitted to return to work and shall not be reemployed for a minimum of one year."
11. On the morning of Wednesday, August 8, Local 110 reestablished the picket line at the Paradise Plant and it remained in effect through Saturday, August 11. Most of TVA's 2,600 construction workers refused to cross the picket line and, as a result, construction activities at the plant came to a virtual standstill.
12. There was no picketing during the week of August 13 to August 17 and the majority of the construction workers, other than the sheet metal workers, returned to work.
13. On Monday, August 20, the picket line was reestablished by Local 110 and it was maintained until a temporary restraining order was issued by this Court in this case on Tuesday, August 21. Most of TVA's construction workers did not report to work while the picket line was in effect.
14. The Paradise Steam Plant will cost approximately $185 million. The first generating unit is scheduled to be placed in operation on or about December *1000 1, 1962, and the second unit is scheduled to be placed in operation in July 1963. Delay in the completion of the plant will require TVA to obtain replacement power from more expensive sources at an increased cost estimated to be more than $10,000 per day of delay.
15. The total payroll for salaried administrative employees at the Paradise Steam Plant is in excess of $6,000 per day and must be continued even when the construction workers do not report to work.
16. At the plant site TVA has construction material and equipment worth approximately $3,450,000, most of which must sit idle if the construction workers do not report to work.
17. TVA has lost many of its skilled workers who have resigned as a result of the labor troubles brought about by the action of the defendants.
18. Every day a picket line is maintained by Local 110 at the Paradise Steam Plant, most of TVA's construction workers do not cross the picket line, and if the picket line is maintained TVA will be unable to proceed with the construction of the plant and will sustain heavy monetary loss and will suffer other irreparable injury, loss, and damage.

Conclusions of Law
1. This Court has jurisdiction of this action under the provisions of 28 U.S.C. §§ 1337 and 1345 (1958).
2. The defendant Local 110 of the Sheet Metal Workers' International Association is a voluntary unincorporated labor organization, which may be sued in its common name. Fed.R.Civ.P. 17 (b); Flame Coal Co. v. United Mine Workers of America, 303 F.2d 39 (6th Cir. 1962).
3. This is a proper case for a class action under rule 23(a) of the Federal Rules of Civil Procedure.
4. The Tennessee Valley Authority is a corporate agency and instrumentality of the United States. Ramsey v. United Mine Workers of America, 27 F.R.D. 423 (E.D.Tenn.1961).
5. Employees of TVA are employees of the United States. Tennessee Valley Authority v. Kinzer, 142 F.2d 833 (6th Cir. 1944); Posey v. Tennessee Valley Authority, 93 F.2d 726 (5th Cir. 1937). TVA employees are subject to the provisions of 5 U.S.C. § 118p (1958), which provides that no person shall accept or hold federal employment who participates in any strike against the United States or any agency thereof; and they are also subject to the provisions of 5 U.S.C. § 118r (1958), which provides that any person who violates section 118p is guilty of a felony.
6. Any person who aids, abets, counsels, commands, induces, or procures the violation of 5 U.S.C. § 118p is guilty as a principal in the commission of the offense. 18 U.S.C. § 2(a) (1958).
7. The General Agreement between TVA and the Tennessee Valley Trades and Labor Council is binding upon Local 110 of the Sheet Metal Workers' International Association.
8. The concerted actions of the members of Local 110 in refusing to report to work at the Paradise Steam Plant and in establishing and maintaining a picket line at the plant to induce other TVA employees not to work constituted a strike in violation of 5 U.S.C. §§ 118p, 118r, and 18 U.S.C. § 2(a) and of the General Agreement.
9. Defendants' peaceful picketing for an unlawful purpose will be enjoined. Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L. Ed. 834 (1949); International Brotherhood of Teamsters, Local 695, A.F.L. v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957); Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950); International Brotherhood of Teamsters, etc. Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995 (1950); Building Service Emp. Intern. Union, Local 262 v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045 (1950); Local Union No. 10 United Ass'n of Journeymen, Plumbers, etc. v. Graham, 345 *1001 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946 (1953); Louisville & N. R. R. Co. v. Brotherhood of Loc. Eng., 190 F.Supp. 829 (W.D.Ky.1961); International Longshoremen's Ass'n v. Georgia Ports Auth., 217 Ga. 712, 124 S.E.2d 733 (1962); 31 Am.Jur. Labor § 433 (1958).
10. The plaintiff TVA will suffer irreparable injury as a result of picketing of the Paradise Steam Plant or other interference or obstruction of the construction of that plant.
11. An injunction should issue enjoining and restraining the defendants, their officers, agents, servants, employees, and members, from encouraging, ordering, organizing, maintaining, operating, permitting or participating in picketing of the Paradise Steam Plant or from interfering with or obstructing construction activities at said plant by any other manner or means.