The **NATIONAL ASSOCIATION OF LETTER CARRIERS**, Plaintiff,

v.

**Winton M. BLOUNT, as Postmaster General of the United States, Defendant.**

**Civ. A. No. 1843–69.**

United States District Court
District of Columbia.

Oct. 30, 1969.

Glenn R. Graves, Washington, D. C., for plaintiff.

David Orlikoff, Atty., Dept. of Justice, for defendant.

Before FAHY, Circuit Judge, and CORCORAN and GESELL, District Judges.

## OPINION

GESELL, District Judge.

The National Association of Letter Carriers (NALC), a public employee union, brings this action against the Postmaster General seeking a declaratory judgment that portions of 5 U.S.C. § 7311 and a required implementing oath offend the First Amendment of the Constitution. NALC, an unincorporated association, is the certified exclusive representative of some 6,000 bargaining units of postal employees and sues on its own behalf and for its thousands of individual members.

Conceding for purposes of this litigation that Congress may prohibit public employees from striking, the complaint attacks the constitutionality of those portions of 5 U.S.C. § 7311 and related portions of the Post Office employment oath bracketed in context below. The statute provides that:

> An individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—
>
> \*   \*   \*   \*   \*   \*
>
> (3) participates in a strike, [or asserts the right to strike,] against the Government of the United States or the government of the District of Columbia; [or]
>
> (4) [is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia.] 5 U.S.C. § 7311(3) and (4).

The corresponding part of the oath, challenged portions of which also are bracketed, reads:

> I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof. [I do

not and will not assert the right to strike against the Government of the United States or any agency thereof while an employee of the Government of the United States or any agency thereof. I do further swear (or affirm) that I am not knowingly a member or an organization of Government employees that asserts the right to strike against the Government of the United States or any agency thereof and I will not, while an employee of the Government of the United States or any agency thereof, knowingly become a member of such an organization.]

The Government concedes that the portions of the statute and oath under attack are separable. The statute itself contains a separability clause disclosing a congressional intent to retain any valid provisions if they can stand independently (5 U.S.C. at 87 (Sec. 7(g) of Pub.L. 89–554, 80 Stat. 631)) and the Court is satisfied that the no-strike clause is viable alone. See United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed. 2d 138 (1968); Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932). Accordingly, it is necessary only to deal here with the portions of the statute and oath bracketed above, the no-strike provision being left in effect.

The case was heard by this three-judge court on application for a preliminary injunction which was denied. Further briefs and affidavits were then filed and the parties were given the opportunity to request further argument. Since neither has done so, the Court deems the matter submitted.

The Government raises two issues which may obviate a decision on the merits. It contests NALC's standing and argues that no case or controversy has been presented to bring the declaratory judgment statute into play.

## I.  STANDING

■ The statute does not provide any sanction against NALC for asserting the right to strike, nor is NALC required to swear an oath. Only individuals are directly affected. The Government accordingly urges that individual members of NALC alone have standing to challenge the statute and oath. But if NALC openly "asserts" the right to strike, its members may be put at hazard since the statute carries criminal sanctions (18 U.S.C. § 1918), and they could be barred from Government employment because of NALC's activities. And other letter carriers may be inhibited from joining because of the possible sanctions. Thus, NALC has an interest in testing the validity of these provisions whose legal effect may be to hamper its efforts.

The Government's strict view of the standing issue ignores the trend of courts "increasingly to recognize the standing of associations to raise in some circumstances the rights of their members." United Federation of Postal Clerks v. Watson, 133 U.S.App.D.C. 176, 409 F.2d 462, 469 (1969). Here, as in *Watson*, the NALC is the authorized spokesman of its membership and recognized as such by Executive Order. It clearly has sufficient interest in this litigation to pursue the matter vigorously and is in a position to bring the issues into sharp focus. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *see also*, NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963); NAACP v. Alabama ex rel Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

NALC's interest, for itself and on behalf of its membership, especially in light of the recent case law, is quite sufficient to give it standing.

## II.  CASE OR CONTROVERSY

■ In its verified complaint, NALC avers that, "through various elected officers and spokesmen, [it] has urged and supported the right of postal employees, along with other federal employees, to strike. Many of its members [who] have advocated, and continue to

advocate, the right to strike, * * * desire to repudiate that portion of the oath." Against this broad assertion there is no competent evidence before the Court that any administrative, criminal or other action has been taken against any NALC member for its disregard of the statute. Indeed, the Postmaster General's affidavit flatly states that no sanctions have been sought for many years under the Act and that "the NALC and its members have complied in all respects with * * * statutory requirements."

The Government argues from this foundation that the mere statement that letter carriers wish to repudiate the oath and continue to assert the right to strike is insufficient to establish a justiciable controversy. When action against a worker for legitimate First Amendment activity is actually begun or clearly imminent, the Government insists, is time enough for a court test.

Superficially, this argument has great appeal. The Government relies chiefly on United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). *Mitchell* cuts strongly in the Government's favor, and, if that case retained its full force, it would be difficult to conclude that a justiciable controversy exists here. The fact is, however, that subsequent case law has weakened *Mitchell* as precedent in First Amendment cases. *Mitchell* was decided prior to judicial recognition of the so-called "chilling effect" doctrine. More recent cases indicate that where freedoms of expression and association are involved, the threat alone of loss of job, criminal sanction or other penalty may inhibit, or "chill" their exercise and thus require court intervention to preserve them. In short, "immediate and real injury is done to the plaintiff's interests if he does *not speak* or act as he says he wants to * * * [because of] the threat of enforcement." National Student Ass'n v. Hershey, D.C.Cir., 412 F.2d 1103, 1111 (1969); Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2nd Cir. 1967); *see also,*

Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961).

It has not yet been held that "every plaintiff who alleges a First Amendment chilling effect * * * has thereby established a case or controversy." National Student Ass'n v. Hershey, 412 F.2d at 1114. The Court must examine each case separately, assessing such factors as the severity of the alleged chilling effect, the nature of the issues, and the prospect of other opportunities to vindicate the rights promptly.

Turning to the circumstances of this case, it is not difficult to appreciate that the chilling effect may well be quite pervasive if "asserts" is given its ordinary dictionary meaning. The oath is a condition of employment for all postal employees. Who can ever say whether it may inhibit persons from joining a collective bargaining agent through which they might more effectively work for improvements in the terms and conditions of their employment. The statute and oath combined may also inhibit a variety of other activities, on and off duty, protected by the First Amendment, including legislative effort on behalf of the right to strike, group discussion, and legitimate protest short of an actual strike. By contrast, similar activities opposing the right to strike are in no way inhibited or restricted.

The issues in this case are not difficult and they have been put sharply in focus by the briefs and oral argument. Indeed the Government itself, while seeking dismissal, still professes no desire to proceed against those who merely advocate the right to strike or seek legislative changes. To be sure there may be other opportunities to resolve these issues upon the refusal of a prospective employee to sign the oath or commencement of proceedings against an employee who violates it. But there seems little point in postponing decision: the

**550**

facts and issues are clear and a potential chilling effect exists.

### III.   MERITS

On their face, the provisions here in issue appear to be in violation of the First Amendment. To the ordinary citizen, the word "assert" evokes the image of advocacy or reasoned argument. It is defined by Webster's Seventh New Intercollegiate Dictionary (1967) to mean, "to state or declare positively." Synonyms are "declare, affirm, protest, avow." The Postmaster states, however, that his and the Government's interpretation is that "asserts" refers only to "overt conduct to incite others" to strike and that "asserts" has never been thought to forbid advocacy of "a change in the law to legalize strikes by government employees." Thus the scope of the provisions would be narrowed to cover only activity which Congress may legitimately proscribe. The Government reaches this conclusion by a two-step process. First, it argues that an ambiguity is created by the "idiomatic structure of the statute." The use of the phrase "asserts the right" rather that "asserts that there is (or ought to be) a right" is said to be adequate to call attention to a special use of "assert" in the statute and oath.* The Government then suggests that the ambiguity is removed by a colloquy in the House debate on the statute, in which its sponsor indicated that the wording had been changed from "believe" to "assert" in order to narrow the scope of prohibition to incitement only.

It is absurd to think that the ordinary employee will carefully parse the oath, grasp the suggested semantic subtlety, and conclude that he may argue for the right to strike with impunity. It is more ridiculous still to imagine that he will resort to this scrap of legisla-

tive history to resolve any ambiguity if perceived. Nor can the Postmaster's interpretation, never publicized or embodied in regulations and not binding on his successors, be relied upon to any extent to remove the ambiguity.

■ The short of the matter is that the language of the statute, reinforced by the identical phrasing of the oath, is not ambiguous. There is consequently no occasion to examine the legislative history. Even if there were an ambiguity, the isolated colloquy the Government cites would not satisfactorily eliminate it. One would be left with words so incurably vague that men would have to guess at their meaning. In the First Amendment area, this defect is as fatal as outright prohibition of free speech.

■ The Government's argument is ingenious but unacceptable. Its showing is simply not enough to avoid the thrust of recent decisions striking down employment oaths and legislation which compel, or, by vagueness, may well result in abandonment of constitutionally guaranteed rights. *See, e. g.,* United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Keyishian v. Board of Regents, etc., 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Stewart v. Washington, 301 F.Supp. 610 (D.D.C.1969).

For the reasons stated above, the Court declares that the challenged statutory provisions and the implementing employment oath violate the First Amendment. The Court further finds that the provisions of the statute are severable. Accordingly, the Court strikes from 5 U.S.C. § 7311(3) the words, "or asserts the right to strike," and the entire text of 5 U.S.C. § 7311(4). The Court enjoins the Postmaster General from exacting, directly or indirectly,

---

\* The Government argues that the use of "advocate," apparently to be given its ordinary meaning, in the loyalty provisions of the oath and statute, also calls attention to the special meaning of "assert." This is specious, particularly

since the loyalty oath and corresponding statutory provision have themselves been held unconstitutionally vague and thus no longer appear. See Stewart v. Washington, 301 F.Supp. 610 (D.D.C.1969).

the oath contained in Clause C of POD Form 61 in connection with employment or otherwise and declares that all existing executed oaths are of no force and effect.

Counsel to submit appropriate order within one week.