UNITED FEDERATION OF POSTAL
CLERKS, Plaintiff,

v.

Winton M. BLOUNT, as Postmaster General of the United States, Defendant.

Civ. A. No. 3297–69.

United States District Court,
District of Columbia.

March 31, 1971.

Donald M. Murtha, Washington, D. C., for plaintiff.

L. Patrick Gray III, Asst. Atty. Gen., Thomas A. Flannery, U. S. Atty., Herland F. Leathers, David Orlikoff, and Peter J. Brickfield, Dept. of Justice, for defendant.

Before WRIGHT and MacKINNON, Circuit Judges, and PRATT, District Judge.

PER CURIAM:

This action was brought by the United Federation of Postal Clerks (hereafter sometimes referred to as "Clerks"), an unincorporated public employee labor organization which consists primarily of employees of the Post Office Department, and which is the exclusive bargaining representative of approximately 305,-000 members of the clerk craft employed by defendant. Defendant Blount is the Postmaster General of the United States. The Clerks seek declaratory and injunctive relief invalidating portions of 5 U.S.C. § 7311, 18 U.S.C. § 1918, an affidavit required by 5 U.S.C. § 3333 to implement the above statutes, and Executive Order 11491, C.F.R., Chap. II, p. 191. The Government, in response, filed a motion to dismiss or in the alternative for summary judgment, and plaintiff filed its opposition thereto and cross motion for summary judgment. A three-judge court was convened pursuant to 28 U.S.C. § 2282 and § 2284 to consider this issue.

*The Statutes Involved*

5 U.S.C. § 7311(3) prohibits an individual from accepting or holding a

position in the federal government or in the District of Columbia if he

"(3) participates in a strike * * * against the Government of the United States or the government of the District of Columbia * * *."

[1] Paragraph C of the appointment affidavit required by 5 U.S.C. § 3333, which all federal employees are required to execute under oath, states (POD Form 61):[1]

"I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof."

18 U.S.C. § 1918, in making a violation of 5 U.S.C. § 7311 a crime, provides:

"Whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he * * *

"(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the District of Columbia * * *

"shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both."

Section 2(e) (2) of Executive Order 11491 exempts from the definition of a labor organization any group which:

"asserts the right to strike against the Government of the United States or any agency thereof, or to assist or participate in such a strike, or imposes a duty or obligation to conduct, assist or participate in such a strike * * *."

Section 19(b) (4) of the same Executive Order makes it an unfair labor practice for a labor organization to:

"call or engage in a strike, work stoppage, or slowdown; picket an agency in a labor-management dispute; or condone any such activity by failing to take affirmative action to prevent or stop it; * * *."

### Plaintiff's Contentions

 Plaintiff contends that the right to strike is a fundamental right protected by the Constitution, and that the absolute prohibition of such activity by 5 U.S.C. § 7311(3) and the other provisions set out above thus constitutes an infringement of the employees' First Amendment rights of association and free speech and operates to deny them equal protection of the law. Plaintiff also argues that the language to "strike" and "participates in a strike" is vague and overbroad and therefore violative of both the First Amendment and the due process clause of the Fifth Amendment. For the purposes of this opinion, we will direct our attention to the attack on the constitutionality of 5 U.S.C. § 7311(3), the key provision being challenged. To the extent that the present wording of 18 U.S.C. § 1918(3) and Executive Order 11491 does not reflect the actions of two statutory courts in Stewart v. Washington, 301 F.Supp. 610 (D.C.D.C.1969) and N.A.L.C. v. Blount, 305 F.Supp. 546 (D.C.D.C.1969), said wording, insofar as it inhibits the *assertion* of the right to strike, is overbroad because it attempts to reach activities protected by the First Amendment and is therefore invalid. With this *caveat*, our treatment of the issue raised by plaintiffs with respect to the constitutionality of 5 U.S.C. § 7311(3) will also

---

1. Punishments for false statements under oath are provided by the general perjury statute, 18 U.S.C. § 1621 (1964). Conviction requires proof that the individual *wilfully* swore falsely and that such wilfulness existed at the time the oath was taken. See United States v. Hvass, 355 U.S. 570, 574, 78 S.Ct. 501, 2 L.Ed.2d 496 (1958); United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L. Ed. 92 (1953). Application of 18 U.S.C. § 1621 to the oath here under consideration gives rise to no problems of constitutional dimension. See generally Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

apply to 18 U.S.C. § 1918, the penal provision, and to Form 61, the affidavit required by 5 U.S.C. § 3333. For the reasons set forth below, we deny plaintiff's request for declaratory and injunctive relief and grant defendant's motion to dismiss.

## I. PUBLIC EMPLOYEES HAVE NO CONSTITUTIONAL RIGHT TO STRIKE.

██ At common law no employee, whether public or private, had a constitutional right to strike in concert with his fellow workers. Indeed, such collective action on the part of employees was often held to be a conspiracy. When the right of private employees to strike finally received full protection, it was by statute, Section 7 of the National Labor Relations Act,[2] which "took this conspiracy weapon away from the employer in employment relations which affect interstate commerce" and guaranteed to employees in the private sector the right to engage in concerted activities for the purpose of collective bargaining. See discussion in International Union, U.A. W.A., A.F. of L. Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 257–259, 69 S.Ct. 516, 93 L.Ed. 651 (1948). It seems clear that public employees stand on no stronger footing in this regard than private employees and that in the absence of a statute, they too do not possess the right to strike. The Supreme Court has spoken approvingly of such a restriction, see Amell v. United States, 384 U.S. 158, 161, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1965), and at least one federal district court has invoked the provisions of a predecessor statute, 5 U.S.C. § 118p–r, to enjoin a strike by government employees. Tennessee Valley Authority v. Local Union No. 110 of Sheet Metal Workers, 233 F.Supp. 997 (D.C.W.D.Ky.1962). Likewise, scores of state cases have held that state employees do not have a right to engage in concerted work stoppages, in the absence of legislative authorization. See, e. g. Los Angeles Metropolitan Transit Authority v. Brotherhood of R.R. Trainmen, 54 Cal. 684, 8 Cal.Rptr. 1, 355 P.2d 905 (1960); Board of Education, etc. v. Redding, 32 Ill.2d 567, 207 N.E.2d 427 (1965); Alcoa, City of v. International Brotherhood of Electrical Workers, 203 Tenn. 13, 308 S.W.2d 476 (1957). It is fair to conclude that, irrespective of the reasons given, there is a unanimity of opinion in the part of courts and legislatures that government employees do not have the right to strike. See Moberly, The Strike and Its Alternative in Public Employment, University of Wisconsin Law Review (1966) pp. 549–550, 554.

Congress has consistently treated public employees as being in a different category than private employees. The National Labor Relations Act of 1937 and the Labor Management Relations Act of 1947,[3] (Taft-Hartley) both defined "employer" as not including any governmental or political subdivisions, and thereby indirectly withheld the protections of § 7 from governmental employees. Congress originally enacted the no-strike provision separately from other restrictions on employee activity, i. e., such as those struck down in Stewart v. Washington and N.A.L.C. v. Blount, supra, by attaching riders to appropriations bills which prohibited strikes by government employees. See for example the Third Urgent Deficiency Appropriation Act of 1946,[4] which provided that no part of the appropriation could be used to pay the salary of anyone who engaged in a strike against the Government. Section 305 of the Taft-Hartley Act[5] made it unlawful for a federal employee to participate in a strike, providing immediate discharge and forfeiture of civil service status for infractions. Section 305 was repealed in 1955

2. 49 Stat. 449, 452 (1937).

3. 61 Stat. 136 (1947).

4. 60 Stat. 268 (1946).

5. 61 Stat. 136, 160 (1947).

by Public Law 330,[6] and re-enacted in 5 U.S.C. § 118p–r, the predecessor to the present statute.

■ Given the fact that there is no constitutional right to strike, it is not irrational or arbitrary for the Government to condition employment on a promise not to withhold labor collectively, and to prohibit strikes by those in public employment, whether because of the prerogatives of the sovereign, some sense of higher obligation associated with public service, to assure the continuing functioning of the Government without interruption, to protect public health and safety or for other reasons. Although plaintiff argues that the provisions in question are unconstitutionally broad in covering all Government employees regardless of the type or importance of the work they do, we hold that it makes no difference whether the jobs performed by certain public employees are regarded as "essential" or "non-essential," or whether similar jobs are performed by workers in private industry who do have the right to strike protected by statute. Nor is it relevant that some positions in private industry are arguably more affected with a public interest than are some positions in the Government service. While the Fifth Amendment contains no Equal Protection Clause similar to the one found in the Fourteenth Amendment, concepts of Equal Protection do inhere in Fifth Amendment Principles of Due Process. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The Equal Protection Clause, however, does not forbid all discrimination. Where fundamental rights are not involved, a particular classification does not violate the Equal Protection Clause if it is not "arbitrary" or "irrational," i. e., "if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Compare Kramer v. Union Free School District, 395 U.S. 621, 627–628, 89 S.Ct. 1886, 23

L.Ed.2d 583 (1969). Since the right to strike cannot be considered a "fundamental" right, it is the test enunciated in McGowan which must be employed in this case. Thus, there is latitude for distinctions rooted in reason and practice, especially where the difficulty of drafting a no-strike statute which distinguishes among types and classes of employees is obvious.

■■ Furthermore, it should be pointed out that the fact that public employees may not strike does not interfere with their rights which are fundamental and constitutionally protected. The right to organize collectively and to select representatives for the purposes of engaging in collective bargaining is such a fundamental right. Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); N.L.R.B. v. Jones & Laughlin, 301 U.S. 1, 33, 57 S.Ct. 615, 81 L.Ed. 893 (1937); Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). But, as the Supreme Court noted in International Union, etc., Local 232 v. Wisconsin Employment Relations Board, supra, "The right to strike, because of its more serious impact upon the public interest, is more vulnerable to regulation than the right to organize and select representatives for lawful purposes of collective bargaining which this Court has characterized as a 'fundamental right' and which, as the Court has pointed out, was recognized as such in its decisions long before it was given protection by the National Labor Relations Act." 336 U.S. at 259, 69 S.Ct. at 524.

■ Executive Order 11491 recognizes the right of federal employees to join labor organizations for the purpose of dealing with grievances, but that Order clearly and expressly defines strikes, work stoppages and slow-downs as unfair labor practices. As discussed above, that Order is the culmination of a long-standing policy. There certainly is no compelling reason to imply the existence of the right to strike from the right to associate and bargain collective-

---

6. 69 Stat. 624 (1955).

ly. In the private sphere, the strike is used to equalize bargaining power, but this has universally been held not to be appropriate when its object and purpose can only be to influence the essentially political decisions of Government in the allocation of its resources. Congress has an obligation to ensure that the machinery of the Federal Government continues to function at all times without interference. Prohibition of strikes by its employees is a reasonable implementation of that obligation.

## II. THE PROVISIONS ARE NEITHER UNCONSTITUTIONALLY VAGUE NOR OVERBROAD.

 Plaintiff contends that the word "strike" and the phrase "participates in a strike" used in the statute are so vague that "men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application," Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), and are therefore violative of the due process clause of the Fifth Amendment. Plaintiff also contends that the provisions are overly broad. While there is no sharp distinction between vagueness and overbreadth, an overly broad statute reaches not only conduct which the Government may properly prohibit but also conduct which is beyond the reach of governmental regulation. A vague statute is merely imprecise in indicating which of several types of conduct which could be restricted has in fact been prohibited.

These concepts of "striking" and "participating in a strike" occupy central positions in our labor statutes and accompanying caselaw, and have been construed and interpreted many times by numerous state and federal courts. "Strike" is defined in § 501(2) of the Taft-Hartley Act to include "any strike or other concerted stoppage of work by employees * * * and any concerted slowdown or other concerted interruption of operations by employees." On its face this is a straightforward definition. It is difficult to understand how a word

used and defined so often could be sufficiently ambiguous as to be constitutionally suspect. "Strike" is a term of such common usage and acceptance that "men of common intelligence" need not guess at its meaning. Connally v. General Construction Co., supra, at 391, 46 S.Ct. at 127.

Plaintiff complains that the precise parameters of "participation" are so unclear that employees may fail to exercise other, protected First Amendment rights for fear of overstepping the line, and that in any event, "participates" is too broad to withstand judicial scrutiny. Plaintiff urges that Congress is required to more specifically define exactly what activities are to be caught up in the net of illegality.

The Government, however, represented at oral argument that it interprets "participate" to mean "striking," the essence of which is an actual refusal in concert with others to provide services to one's employer. We adopt this construction of the phrase, which will exclude the First Amendment problems raised by the plaintiff in that it removes from the strict reach of these statutes and other provisions such conduct as speech, union membership, fund-raising, organization, distribution of literature and informational picketing, even though those activities may take place in concert during a strike by others. We stress that it is only an actual refusal by particular employees to provide services that is forbidden by 5 U.S.C. § 7311(3) and penalized by 18 U.S.C. § 1918. However, these statutes, as all criminal statutes, must be read in conjunction with 18 U.S. C. §§ 2 (aiding and abetting) and 371 (conspiracy). We express no views as to the extent of their application to cases that might arise thereunder as it is practically impossible to fashion a meaningful declaratory judgment in such a broad area.

This case does not involve a situation where we are concerned with a prior construction by a state supreme court, but rather one in which we are faced

with the interpretation to be given a federal statute in the first instance by a federal court. Under such circumstances federal courts have broad latitude, the language of the statute permitting, to construe a statute in such terms as will save it from the infirmities of vagueness and overbreadth. Kent v. Dulles, 357 U. S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). This principle of interpretation is equally true of cases which involve rights under the First Amendment. United States v. C.I.O., 335 U.S. 106, 120–122, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948); Chaplinsky v. New Hampshire, 315 U.S. 568, 573–574, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); see also Williams v. District of Columbia, 136 U.S.App.D.C. 56, 419 F.2d 638 (en banc, 1969). Such construction of the word "strike" and the phrase "participates in a strike" achieves the objective of Congress and, in defining the type of conduct which is beyond the reach of the statute, saves it from the risk of vagueness and overbreadth.

Accordingly, we hold that the provisions of the statute, the appointment affidavit and the Executive Order, as construed above, do not violate any constitutional rights of those employees who are members of plaintiff's union. The Government's motion to dismiss the complaint is granted. Order to be presented.

J. SKELLY WRIGHT, Circuit Judge (concurring):

I concur in Part II of the majority's opinion and in the result. My following comments are addressed to the main issue raised in Part I of the opinion—the validity of the flat ban on federal employees' strikes under the Fifth Amendment of the Constitution. This question is, in my view, a very difficult one, and I cannot concur fully in the majority's handling of it.

It is by no means clear to me that the right to strike is not fundamental. The right to strike seems intimately related to the right to form labor organizations, a right which the majority recognizes as fundamental and which, more importantly, is generally thought to be constitutionally protected under the First Amendment—even for public employees. See Melton v. City of Atlanta, 324 F. Supp. 315 (N.D.Ga.1971); Atkins v. City of Charlotte, 296 F.Supp. 1068 (W. D.N.C.1969). If the inherent purpose of a labor organization is to bring the workers' interests to bear on management, the right to strike is, historically and practically, an important means of effectuating that purpose. A union that never strikes, or which can make no credible threat to strike, may wither away in ineffectiveness. That fact is not irrelevant to the constitutional calculations. Indeed, in several decisions, the Supreme Court has held that the First Amendment right of association is at least concerned with essential organizational activities which give the particular association life and promote its fundamental purposes. See Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); United Mine Workers, etc. v. Illinois State Bar Assn., 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). I do not suggest that the right to strike is co-equal with the right to form labor organizations. Nor do I equate striking with the organizational activities protected in *Williams* (access to the ballot) or *United Mine Workers* (group legal representation). But I do believe that the right to strike is, at least, within constitutional concern and should not be discriminatorily abridged without substantial or "compelling" justification.

Hence the real question here, as I see it, is to determine whether there is such justification for denying federal employees a right which is granted to other employees of private business. Plaintiff's arguments that not all federal services are "essential" and that some privately provided services are no less "essential" casts doubt on the validity of the flat ban on federal employees' strikes. In our mixed economic system of governmental and private enterprise, the line separating governmental from private functions may depend more on

the accidents of history than on substantial differences in kind.

Nevertheless, I feel that I must concur in the result reached by the majority in Part I of its opinion. As the majority indicates, the asserted right of public employees to strike has often been litigated and, so far as I know, never recognized as a matter of law. The present state of the relevant jurisprudence offers almost no support for the proposition that the government lacks a "compelling" interest in prohibiting such strikes. No doubt, the line between "essential" and "non-essential" functions is very, very difficult to draw. For that reason, it may well be best to accept the demarcations resulting from the development of our political economy. If the right of public employees to strike—with all its political and social ramifications—is to be recognized and protected by the judiciary, it should be done by the Supreme Court which has the power to reject established jurisprudence and the authority to enforce such a sweeping rule.