UNITED STATES of America, Plaintiff,

v.

James E. McDONALD, Defendant.

Crim. A. No. H–81–132.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 5, 1983.

George A. Kelt, Jr., Asst. U.S. Atty., Daniel K. Hedges, U.S. Atty., Houston, Tex., for plaintiff.

Roger B. Greenberg, Mark S. Finkelstein, Houston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

### Introduction

On August 31, 1981, defendant was indicted for willfully participating in a strike against the United States on August 3, 1981, in violation of Section 7311 of Title 5, United States Code.[1] On September 16, 1982, defendant moved to dismiss the indictment. Having determined that defendant had made a threshold showing of selective prosecution, *see, United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981),[2] the Court granted defendant's request for a hearing on his Motion to Dismiss. At the hearing held on November 30, 1981, defendant presented testimony of four witnesses: a television news reporter, two FBI agents, and the United States Attorney for the Southern District of Texas. The government offered no testimony. The parties subsequently submitted numerous briefs and letters in support of their respective positions.

Defendant moves to dismiss the indictment on three grounds: (1) that it does not state facts sufficient to constitute a federal offense because 18 U.S.C. § 1918, read in conjunction with 5 U.S.C. § 7311, states a condition of public employment but does not prohibit strikes; (2) that 18 U.S.C. § 1918 is unconstitutionally vague in viola-

---

1. 5 U.S.C. § 7311 provides that:
   "An individual may not accept or hold a position in the Government of the United States ... if he—...
   (3) participates in a strike or asserts the right to strike against the Government of the United States...."
   18 U.S.C. § 1918 provides that:
   "Whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the government of the United States if he—...
   (3) participates in a strike, or asserts the right to strike against the Government of the United States ...

   shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both."

2. "A defendant need not, however, present a *prima facie* case in order to justify an evidentiary hearing. So long as the defendant alleges some facts (a) tending to show that he has been selectively prosecuted, and (b) raising a reasonable doubt about the propriety of the prosecution's purpose ... a district court, in the absence of countervailing reasons, should grant a request for a hearing." (citations omitted)

tion of the Due Process Clause of the Fifth Amendment of the United States Constitution; and (3) that the Department of Justice has intentionally and purposefully discriminated against him, in violation of the Equal Protection Clause of the Fifth Amendment of the United States Constitution, by selecting him for prosecution on the basis of his exercise of rights guaranteed by the First Amendment.

### I.

■ The Court finds defendant's first and second arguments to be without merit and will dispose of them summarily. Title 18 U.S.C. § 1918, on its face, is clearly a criminal statute. Title 18 of the United States Code is entitled "Crimes and Criminal Procedures" and it concerns criminal offenses exclusively, not the administration of the federal government or conditions of employment. Violation of Section 1918 brings the criminal penalties of a fine and imprisonment. As the court noted in *United States v. Haggerty,* 528 F.Supp. 1286 (D.Cal.1981), although there have been no reported prosecutions under the statute prior to its application to the August 3, 1981, P.A.T.C.O. strike, courts in considering injunctions against such strikes, have indicated that the statute is criminal in nature. *See, e.g., Air Transport Association of America v. P.A.T.C.O.,* 516 F.Supp. 1108, 1110 (E.D.N.Y.1981); *United States v. P.A.T.C.O.,* 504 F.Supp. 432, 440 (N.D.Ill.1980) *rev'd on other grounds* 653 F.2d 1134 (7th Cir.1981); *Air Transport Association of America v. P.A.T.C.O.,* 453 F.Supp. 1287, 1293 n. 8 (E.D.N.Y.1978) *aff'd* 594 F.2d 851 (2d Cir.1978), *cert. denied* 441 U.S. 944, 99 S.Ct. 2163, 60 L.Ed.2d 1046 (1979); *Air Transport Association v. P.A.T.C.O.,* 313 F.Supp. 181, 185 (E.D.N.Y.1970) *vacated in part on other grounds sub nom. United States v. P.A.T.C.O.,* 438 F.2d 79 (2d Cir. 1970) *cert. denied* 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971).

The Court is equally unpersuaded by defendant's argument that the statute is void for vagueness. "Accept" and "hold," as the words are used in the statute, give persons of ordinary intelligence fair notice that the refusal to provide services by an employee who has accepted or holds a position in the federal government is forbidden by 5 U.S.C. § 7311(3) and criminalized by 18 U.S.C. § 1918. *See United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, 884–85 (D.D.C.1971) *aff'd mem* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).

### II.

### A.

■ In considering defendant's selective prosecution defense, the Court is, at the outset, wary of overstepping the boundary which separates judicial from executive power, cognizant that " '[a]s an incident of the constitutional separation of powers, . . . the courts are not free to interfere with the free exercise of the discretionary powers of the attorneys of the United States over criminal prosecutions.' " *United States v. Kelly,* 556 F.2d 257, 264 (5th Cir.1977), *cert. denied* 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1977), quoting *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.) (en banc), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). Nevertheless, the law provides a defendant relief from discriminatory prosecution. In *United States v. Johnson,* 577 F.2d 1304, 1308 (5th Cir.1978), the Court of Appeals for the Fifth Circuit adopted the test of discriminatory prosecution set forth in *United States v. Berrios,* 501 F.2d 1207, 1211 (2nd Cir.1974):

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.'

Once defendant makes out a *prima facie* case, the burden then shifts to the government to prove that the selection was based on non-discriminatory grounds. In the cases involving discrimination in criminal prosecution, the Courts have not clearly delineated the standard or sufficiency of proof which the government must meet. For example, the court held on the facts presented in *United States v. Falk,* 479 F.2d 616, 620–21 (7th Cir.1973), "when a defendant alleges intentional purposeful discrimination and presents facts sufficient to raise a reasonable doubt about the prosecutor's purpose," the Court may no longer presume the prosecution was "undertaken in good faith and in non-discriminatory fashion . . . ." Rather, "it is incumbent upon the government to come forward with evidence . . . or otherwise explain why [defendant] is being singled out for prosecution . . . ." *Id.* at 621. The Court, thus, indicated that the government had a burden of production rather than persuasion. However, it stated at another point in the decision that after plaintiff makes out a *prima facie* case, "the burden of going forward with proof of non-discrimination will then rest on the government," and "the seemingly inherent discrimination against [defendant] in prosecuting him for insisting on his claim as a conscientious objector [required] the government to present compelling evidence to the contrary if its burden is to be met." *Id.* at 624. Moreover, in *Berrios,* 501 F.2d at 1212, n. 4, the United States Court of Appeals for the Second Circuit contrasted "the quantum of proof required to support merely an order for evidentiary production," at issue in that case, to the issue in *Falk* where defendant's *prima facie* case of selective prosecution justified "a shift in the burden of proof to the government—i.e., the burden of proving that the decision was free of discriminatory taint," characterizing the *Berrios* issue as "of far less serious consequence to the government than is shifting *the ultimate burden of proof.*" (emphasis added)

Discriminatory prosecution constitutes a denial of equal protection in violation of the Fifth Amendment to the United States Constitution.

> Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

*Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886). In equal protection challenges to employment actions rather than criminal prosecutions, courts have held that the burden of persuasion shifts to defendant to prove that the action of which plaintiff complains would have occurred even absent the protected conduct. *See e.g., Heit v. Bugbee,* 494 F.Supp. 66 (E.D.Mich.1980); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Arlington Heights v. Metro Housing Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); and *University of California Regents v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). In *Mt. Healthy,* after plaintiff showed his constitutionally protected conduct was a substantial or motivating factor in the employer's decision, the ultimate burden of persuasion shifted to defendant to prove "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the [plaintiff's] protected conduct." It appears to this court that in a discriminatory prosecution case, as well, it is the burden of persuasion rather than production which shifts to the government. Nevertheless, in the instant case it is not necessary to decide the question because the government has not even come forward with any evidence in support of a legitimate basis for its prosecution of James McDonald.[3]

---

**3.** Because the parties appeared to agree that the case presented a problem of "mixed mo-

tives," the Court requested them to brief that issue. Defendant, relying on *Mt. Healthy*

## B.

With respect to the first prong of the *Berrios* test that defendant has been intentionally singled out for prosecution, the government stipulated at the hearing in the present case that of 300 to 400 PATCO Union members in the Southern District of Texas who went on strike on August 3, 1981, only three have been prosecuted. The government has subsequently submitted statistics showing a total of 395 strikers of the 21 of them at Hobby, defendant was the only PATCO member who was prosecuted. In its post-hearing memorandum, however, the government argues that other PATCO strikers are not similarly situated to defendant, despite the fact that they engaged in the conduct which the government claims constitutes a crime, because they did not have the same status in the Union or the same leadership role in the strike as defendant did. As discussed more fully below, the government offered no evidence at the hearing to show that defendant was a leader of the strike, and his presidency of the Union is not only irrelevant to the offense charged but is an exercise of the rights of association and expression protected by the United States Constitution. In other respects, defendant clearly was similarly situated to other Union members. Accordingly, the Court finds that defendant has made a *prima facie* showing of intentional discrimination.

■ In considering the second prong of the *Berrios* test, selection on an impermissible basis, as a preliminary matter, there is no question that defendants' right to join a union and to assert the right to strike is protected. Title 5 U.S.C. § 7102 provides, in pertinent part, that:

> [e]ach employee [of the federal government] shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right ... includ[ing] the right—
>
> > (1) to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities ...

In addition, a union member's role as a spokesman in asserting the right to strike is protected conduct. *United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, 881 (D.D.C.1971) (holding that 18 U.S.C. § 1918(3) "insofar as it inhibits the assertion of the right to strike, is overbroad because it attempts to reach activities protected by the First Amendment and is therefore invalid.")

■ Whereas generally the government may be entitled to consider a "special sta-

School District v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and *Wright Line,* 251 NLRB, No. 150 (1980), argues that after he has made out a *prima facie* case of discriminatory prosecution by showing that his exercise of First Amendment rights was a substantial or motivating factor in the decision to prosecute him, the burden of persuasion shifted to the government to prove by a preponderance of the evidence that defendant would have been prosecuted in the absence of his protected conduct. The government has not responded directly to this argument. The court notes that the First and Third Circuits have held that the rule of *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), that the ultimate burden of proving employment discrimination under Title VII of the Civil Rights Act rests with plaintiff, applies also in cases of "mixed-motive" dis-

charges in violation of Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3). *National Labor Relations Board v. Wright Line,* 662 F.2d 899 (1st Cir.1981); *Behring International, Inc. v. National Labor Relations Board,* 675 F.2d 83 (3rd Cir.1982). The Court of Appeals for the Fifth Circuit, however, has apparently adopted the NLRB's *Wright Line* allocation of the burden of proof, without detailed analysis, in *NLRB v. Charles H. McCauley Associates,* 657 F.2d 685 (5th Cir. 1981) and *Red Ball Motor Freight, Inc. v. NLRB,* 660 F.2d 626 (5th Cir.1981).

Having reviewed the evidence submitted at the oral hearing, this court concludes that this is not truly a "mixed motive" case. Although it claims it had reasons other than his position as president of the Union for prosecuting defendant, the government failed to offer any evidence of what these are.

tus" of a potential defendant in deciding to prosecute, see, e.g., *United States v. Ojala,* 544 F.2d 940, 943–45 (8th Cir.1976), and cases cited therein, it is clear beyond question that it may not consider the status of being the President of a union because the right to join a union, and thus to represent other members as a leader of the union, is protected by statute and by the First Amendment. The government argues by analogy, in its letter to the court dated December 17, 1981, at page 3, that if four of eight bank robbers who "were the planners and leaders, provided the guns, had long criminal records, were older robbers and fired shots during the commission of the robbery while those not prosecuted furnished the get-away car, kept watch outside the bank, and were eighteen years old, the government could lawfully prosecute the former ..." The government overlooks the fact that it offered absolutely no evidence that defendant was a planner or leader of the strike of August 3, 1981, that he had a criminal record, provided tools for the strike, or took in any way a more active role in it than other strikers. Rather, in prosecuting defendant, the government relied solely on the fact that he was a leader of the Union. This Court agrees with the United States District Court for the District of Arizona which held, in ruling on a motion to dismiss the indictment against another PATCO official in *United States v. Paisley,* Cr. 81–196 PHX-CLH (Order) (D.Ariz. Nov. 12, 1981), where the United States had "shown neither evidence that [defendant] organized or led the local strike activity nor any reasonable basis for selecting for prose-

cution only [defendant], the local Union President (and, in a separate prosecution ..., the local union Vice-President)," that the decision to prosecute defendant was based on impermissible grounds, namely the "exercise by [defendant] of the constitutional right to belong to a Union and to hold office in that Union." To select defendants for prosecution on the basis of their leadership of the union is to punish individuals for organizing, because organization necessarily implies leadership.[4] It is to chill the First Amendment rights of association and expression.

The government's own documents reveal that its selection of defendant for prosecution was based on his leadership of the union. Defendant's Exhibit # 3 shows that the Justice Department sent telegraphic messages to local offices of the United States Attorneys on August 2, 1981, with "names of suspected strike leaders as provided by FAA officials". The list also included a designation of the offices held by the suspects. For Houston the list read: "Frank Juarez," who Mr. Hedges testified he believed was president of the PATCO local out at the air route traffic control center." (Transcript p. 55, 11.5–7), "Leslie Hall [VP]" and "George Johnson [TRES]". Defendant's name is conspicuously absent! On the following day a telegraphic message from the United States Attorney's Office in Washington, D.C., instructed local United States Attorneys to "move against those identified as strike leaders" by the Department of Justice and, in developing information to support a complaint, to ensure substantial admissible evidence in four areas:

---

**4.** The United States Court of Appeals for the Fifth Circuit has held in *NLRB v. South Central Bell Telephone Company,* 688 F.2d 345, 5th Cir., 1982, at 354, in the context of employer discrimination against employees on the basis of Union membership, in violation of § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) (1976), that union membership refers not only to the decision to join a union "but also to [the] decision as to the level of participation in the union and union activities" and that "[b]ecause holding union office is the 'essence of protected union activities, ... Section 8(a)(3) prohibits employer discrimination against union officers based solely on their status." (citations omitted) Noting that the Na-

tional Labor Relations Act's "strong congressional policy mandating the protection of union officers from interference and coercion by an employer" the court held that the rights of officers, "the disparate disciplining of union officers ... cannot be based on mere status but must be based on clear and specific contractual language." *See also Fournelle v. NLRB,* 670 F.2d 331, 338 (D.C.Cir.1982) (noting that if the collective bargaining agreement is neutral on the question of strike, containing only a general no-strike clause, "if the union official is not otherwise a leader of the unprotected strike, selected discipline may run afoul of section 8(a)(1) and (3) of the NLRA").

(1) evidence that there is a strike action involving the FAA facility at which the target works;

(2) evidence that the target is an FAA employee;

(3) evidence that the target has failed to report to work as scheduled. This should include evidence of the normal procedures established for employees seeking sick leave or emergency leave and of the fact that the target failed to avail himself of such procedures or is misusing such procedures;

(4) other evidence, beyond failure to report for work, which indicates that the target is a striker. This should include, for example, public admissions, presence on picket lines, or involvement in persuading other controllers to strike. In the absence of any such evidence, the FBI should contact the target in an effort to develop evidence of his intentions.

The United States Attorney of the Southern District of Texas, Mr. Hedges, testified that his office selected individuals for prosecution for violation of the statute on the basis of the four evidentiary criteria which issued from Washington, D.C., and that his office exchanged names with the Department of Justice in Washington, D.C., and communicated with Mr. Jenkins at Hobby Airport.

Mr. Hedges identified the primary factor in prosecuting defendant as the fact that he went on strike. Striking, an element of the offense charged, obviously could not have been the basis of the selection of defendant because it is uncontroverted that other PATCO members of Hobby also went on strike but were not selected for prosecution. Mr. Hedges testified that the fact defendant was a Union leader and officer at the time was also a factor in deciding to prosecute him because "deterrence is greatest when one prosecutes the instigators or leaders of an apparent criminal action." (Transcript, p. 39, 11.2–4) In response to a question from the court as to whether the government believed a mandate to proceed

against union leadership first was implicit in the fourth evidentiary criterion, Mr. Hedges testified that "some of the evidence that came from the air traffic control towers pertained to some of the leaders and officials," and to defendant in particular, and that the government viewed defendant as "a leader and an instigator insofar as his Union is concerned". Although he testified that "[w]e have other information that really has not been discussed here so far" that defendant was a leader of the strike, the government has not come forward with any evidence that defendant was a leader of the August 3rd strike, the criminal action with which he is charged. Rather, he testified at the hearing, "[w]e basically started at the top of the list, at the president. We met the criteria. The Justice Department drew a line, said they were not going to investigate and prosecute everybody. At that stage of the game everybody had been charged. I can't say if the investigation had continued there wouldn't have been other charges brought." (Transcript p. 49, 11.16–22) Thus, at least the local United States Attorney's priority was apparently the highest leadership of the Union. Defendant has clearly made a *prima facie* showing of purposeful discrimination.

Although the government argues that the Court should infer from defendant's role as Union leader that he was the leader of the strike, the government, which shoulders the burden of proof on the question, has presented no evidence to support that inference. To so infer would infringe on defendant's First Amendment rights. The United States Attorney testified that he interpreted defendant's statement, quoted in the affidavit signed by Mr. Todd, Defendant's Exhibit # 2, that he would "not return to work unless there was a fair contract for the air traffic controllers," as a statement that he was on strike. Defendant, however, has never contested that he was on strike, and there is no question that defendant was targeted for investigation prior to the time he went on strike and prior to his statements on the television broadcast.[5] Gerald

---

5. Although defendant originally based his claim of discriminatory prosecution on a claim of

retaliation for his statements made on televi-

Galbraith, an FBI agent who investigated the PATCO strike, reported (DX 2) that "this investigation was instituted August 3, 1981, upon receipt of authorization from the United States Department of Justice, Washington, D.C., and the Office of the United States Attorney, Houston, Texas, for filing of complaints charging *McDonald and other local PATCO officials* with violation of Title 18, United States Code, § 1918, (Federal Anti-Strike Statute)." (emphasis added) Roland E. Todd, special agent for the FBI, testified that he was instructed by his supervisor to go to Hobby Airport on August 3, 1981, and once he got there to investigate only defendant, before defendant was due to report to work. Although eight or ten of the twenty-three or so other controllers had already missed their shifts, had therefore struck, he did not investigate any of them.

Moreover, this case is in sharp contrast to the tax protestor cases in which courts have held that selection is "not impermissible solely because it focuses upon those most vocal in their opposition to the law they are violating," and the government has a "legitimate interest in punishing flagrant violators and deterring violations by others," *United States v. Johnson*, 577 F.2d 1304, 1309 (5th Cir.1978). Here, McDonald's vocal opposition was not a factor in deciding to prosecute him, according to the government, and there is a complete absence of evidence that his striking was in any way different from that of the other strikers, let alone "flagrant." There is no evidence that defendant used his protected status as President to incite or instigate others to violate the law on the occasion in question.

The government submitted as "exhibits" to its post-hearing memoranda: decisions and orders issued in similar cases; memoranda and motions in similar cases; and, in response to a request by the court, statistics on the number of air traffic controllers who went out on strike on August 3 and 4, 1981. It has also submitted the transcript of a video cassette interview on Channel 13, KTRK–TV on August 3, 1981, an affidavit by Curtis Jenkins regarding his observa-

tions of the television interview, and a letter on PATCO letterhead from defendant, as president of Local 441, to Federal Aviation Administration supervisors, dated June 1, 1981, which states that "[t]he only course of action left to professional air traffic controllers is to withhold their services to obtain a contract which is *fair and equitable*," (emphasis in original). The government offers no explanation why the latter three documents were not offered at the oral hearing, and defendant has raised questions as to their admissibility and relevance. Most significantly, this evidence was offered at the twelfth hour. There are two plausible explanations for this: ineptitude on the part of the United States Attorney; or an after-the-fact rationalization or pretext for the government's indictment of defendant. The Court will not attribute incompetence to the United States Attorney and thus is compelled to conclude that this letter is pretextual and was not in fact the basis for prosecution of defendant. Moreover, it constitutes an assertion of the right to strike which is protected and, because it was written on June 1, 1982, two months prior to the August strike with which defendant is charged, is evidence of his leadership of the union, not of the August strike. In sum, the government has not come forward with any evidence showing a permissible basis for its selection of McDonald for prosecution.

■ The conduct of the government's prosecution of McDonald contrasts with prosecutions of PATCO officials in other jurisdictions. Unlike the court in *United States v. Butterworth*, Cr. 81–0335 slip. op. (N.D.Cal. Nov. 10, 1981), for example, this Court cannot find that the selection of defendant was "not unlawfully based upon any activity of any defendant other than that charged...." Unlike the defendant in *United States v. Amato*, 534 F.Supp. 1190, 1194–96 (E.D.N.Y.1982), defendant McDonald *has* shown a direct causal connection between his status as a PATCO official and the government's decision to prosecute, and no evidence has been adduced that defendant was the leader of the August 3rd

sion in which he asserted the right to strike, he subsequently dropped this claim.

strike. This Court cannot find, as the *Amato* court did, that the Department of Justice determined that strike leadership, as opposed to union leadership, was the most appropriate criteria for selection for prosecution, and the evidence here does support a finding that the Department of Justice's policy was designed to target PATCO leaders, officials and officers.

### Conclusion

Defendant McDonald has made out a *prima facie* case of discriminatory prosecution, sufficient to shift the burden of proof to the government. The government has failed to meet its burden of proof of non-discriminatory basis for its selection of defendant for prosecution. In fact, the evidence offered by the government supports defendant's argument that he was selected on the basis of his exercise of his First Amendment right to join and serve as the leader of a Union. Because "[t]he judiciary has always borne the basic responsibility for protecting individuals against unconstitutional invasions of their rights by all branches of Government, *United States v. Johnson,* 577 F.2d 1304 (5th Cir.1978), quoting *Stamler v. Willis,* 415 F.2d 1365, 1369–70 (7th Cir.1969), *cert. denied sub nom.; Ichord v. Stamler,* 399 U.S. 929, 90 S.Ct. 2231, 26 L.Ed.2d 796 (1970), this Court is obligated to dismiss the indictment of defendant.

SO ORDERED.