**ORION SHIPPING & TRADING CO., Inc., Libelant,**

**v.**

**EASTERN STATES PETROLEUM CORPORATION OF PANAMA, S.A., Eastern States Petroleum and Chemical Corporation and Signal Oil & Gas Company, Respondents.**

United States District Court
S. D. New York.
May 28, 1962.

Healy, Baillie & Burke, New York City, for libelant; Raymond J. Burke, Thomas A. Dillon, Jr., New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for respondents; J. Joseph Noble, J. Bond Smith, Jr., New York City, of counsel.

DAWSON, District Judge.

This is a motion by the libelant, Orion Shipping & Trading Co., Inc. (hereinafter called Orion) for an order under a provision of the United States Arbitration Act, 9 U.S.C. § 9, confirming an arbitration award in favor of Orion against Eastern States Petroleum Corporation of Panama, S. A. (hereinafter called Eastern Panama) and Signal Oil & Gas Company (hereinafter called Signal), or in the alternative, modifying the award as to Signal and confirming it as to Eastern Panama. The respondents Eastern Panama and Signal have filed a cross-motion to vacate or modify the award of the arbitrator on the grounds, *inter alia*, that the award in the sum of $988,081.98, together with interest, is arbitrary and grossly excessive, that the arbitrator committed misconduct in his computation of the damages and in including Signal in his award, and that the arbitrator exhibited evident partiality in favor of Orion and against Eastern Panama and Signal.

### Background of the Arbitration

In the latter part of October 1954, Orion and Eastern Panama entered into a Contract of Affreightment (hereinafter called the Contract), dated as of October 8, 1954, under which Eastern Panama agreed to furnish and Orion agreed to transport an average of 10,500 barrels of crude oil per day from the Persian

Gulf and other areas to a refinery at Houston, Texas, owned and operated by Eastern Panama's parent corporation, Eastern States Petroleum and Chemical Corporation (hereinafter called Eastern American).[1] At the request of Orion, Eastern American which had participated in the preliminary negotiations for the Contract, issued a letter guaranteeing performance of the Contract by Eastern Panama. Eastern American was subsequently merged into Signal.

The Contract was initially to be in effect for a period of five years beginning April 1, 1955, terminating on March 31, 1960 and was later extended to March 1961.

On March 10, 1959, the President of the United States promulgated mandatory oil import quotas on the importation of crude oil into the United States. On September 29, 1959, Eastern Panama notified Orion of its decision to terminate the Contract on the ground that as a result of the imposition of the oil import quota the purpose of the Contract was frustrated.

The Contract contained an arbitration clause and pursuant to an order of this court on March 3, 1960, Eastern Panama was directed to proceed to arbitration with Orion to determine the validity of the termination and to ascertain the damages to Orion, if any. The order compelling Eastern Panama to arbitrate was affirmed by the Court of Appeals. Orion Shipping & Trading Co. v. Eastern States Petroleum Corporation of Panama, S. A., 284 F.2d 419 (2d Cir. 1960).

Hearings were held before the sole arbitrator, Admiral Edmond J. Moran, during the period from July to November 1961. On February 13, 1962 the arbitrator rejected the defense of frustra-

tion and rendered a written award (hereinafter called the Award) in favor of Orion in the sum of $988,081.98, together with interest. The Award provided for payment of the amount awarded "by the Eastern States Petroleum Corporation of Panama, S. A., or, as the situation requires, by their guarantors, in person of Signal Oil & Gas Company, as the surviving corporation of the merger between the latter and the said guarantors, in person of Eastern States Petroleum & Chemical Corporation  *  *  *."

### Validity of the Award as Against Eastern Panama

The respondents urge that the Award should be vacated for the following reasons:

1. That the sum awarded of $988,081.98, together with interest, is arbitrary, grossly excessive and being totally unsupported by any evidence constitutes legal fraud on Eastern Panama.

2. That the arbitrator committed misconduct in refusing to hear testimony material to the question of damages and in making an award without receiving any credible proof that any damage was actually sustained.

3. That the arbitrator exhibited evident partiality in favor of Orion against Eastern Panama and Signal by rejecting all the contentions of Eastern Panama and Signal and accepting all contentions of Orion.

4. That the arbitrator imperfectly executed his powers in that he failed to allow respondent Eastern Panama the amount of the address commission which Orion conceded Eastern Panama was entitled to receive.[2]

The nature and extent of federal court review of arbitration awards is strictly limited by statute.[3] The statu-

---

**1.** As of the time when the Contract was signed Eastern American was known as Eastern States Petroleum Company, Inc.

**2.** In addition to the above four grounds, Signal urges that the Award should be vacated as to it because it was not a party to the arbitration proceedings and the arbitrator exceeded his powers in includ-

ing Signal in his Award. This latter argument will be considered in a subsequent section of this opinion.

**3.** Section 10 of the Arbitration Act (9 U.S.C. § 10) provides:
"In either of the following cases the United States court in and for the district wherein the award was made may

tory provisions do not permit a review de novo, nor will an award be vacated on the grounds of erroneous findings of fact or of misinterpretations of law.

"Were we empowered to view the matter *de novo*, we would find much to persuade in the arguments advanced by the dissenting arbitrator. But as respondent recognizes, the court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i. e., avoidance of litigation, would be frustrated. See Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv.L.Rev. 681 (1950). The statutory provisions, 9 U.S.C. §§ 10, 11 in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law. * * * " Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960).

The reasoning used by the Court of Appeals in the Amicizia case was expressed over 100 years ago by the United States Supreme Court in Burchell v. Marsh, 17 How. 344, 15 L.Ed. 96, 99 (1854) as follows:

"Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision, of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation * * * "

"Courts should be careful to avoid a wrong use of the word 'mistake', and, by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over awards * * *."

The moving papers fail to demonstrate the existence of any of the statutory grounds for vacating the arbitrator's award against Eastern Panama.

The principal complaint by the respondents relates to the arbitrator's computation of damages. The Court finds no misconduct or partiality on the part of the arbitrator. He apparently performed his duties carefully, impartially and with a great deal of patience and thoughtfulness.

Basically the arbitrator computed the amount of damages by taking the difference between what he determined to be the tanker market rate on the day of termination of the Contract and the contract rate, multiplied by the number of barrels of oil remaining to be shipped on the termination date, plus an amount of damages, at the same rate, for some optional quantities of barrels which Orion might have elected to transport under the Contract. Eastern Panama contends that the arbitrator should have taken evidence as to Orion's costs of performing the Contract to determine whether the Contract would have yielded a profit, and

---

make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

to determine whether the termination actually resulted in damage to Orion.

The contention of Eastern Panama that the actual cost of performing the Contract should have been taken into consideration was carefully considered by the arbitrator in reaching his decision to apply the market rate as the subtrahend in determining the amount of damages to be awarded. The conclusion of the arbitrator not to consider actual cost is in accordance with the general method of computing damages where damage is ordinarily determined by deducting the market value from the contract price. Actual cost in such case is usually irrelevant. McCormick, Damages, §§ 44, 46.

It is true that the arbitrator did not apply the rule of damages followed in cases involving a breach by the charterer of a single ship. The rule in such a case "is that the shipowner is entitled to the net amount that would have been earned under the charter sued on, less the net amount actually earned, or which could with reasonable diligence have been earned during the time required in the voyage named in the charter." Ainesworth Coal & Iron Co. v. Grangesberg Oxelosund, 287 F. 201, 296 (4th Cir. 1923); Aaby v. States Marine Corp., 107 F.Supp. 484, 486 (S.D.N.Y.1951); Cargo Ships El Yam v. Stearns & Foster Co., 149 F.Supp. 754, 765 (S.D.N.Y. 1955). Implicit in this test is a determination of the shipowner's costs of operation.

The contract involved in this action, however, was not a charter party for the charter of a single ship or even of particular ships. It was a contract of affreightment for the carriage of petroleum products from a foreign port to Houston, Texas. By the terms of the contract Orion was to supply vessels and Eastern Panama was to provide petroleum products. There was no designation of the particular vessels to be employed. They could have been "nominated without restriction of flag." Orion could have used its own ships, it could have chartered other ships or made any other arrangements necessary for the transportation. It is well recognized that there is a standard market rate for tankers for the transportation of petroleum products, which rate varies from time to time. When the contract with Orion was cancelled on September 29, 1959, the contract required Orion to transport at rates varying from USMC minus 32½% to USMC minus 65%, but on that date the tanker market rate for a contract of affreightment similar to the Orion contract was USMC minus 75%. The arbitrator therefore decided that the measure of damages to Orion was the difference between the contract rate at the date of termination and the tanker market rate at that date and computed the damages on this basis. As a result of using this method of determination it became unnecessary to determine the costs of operation of Orion either at or after the date of wrongful termination of the contract. The arbitrator let the parties put in any evidence they desired in connection with the issue before him. He refused, however, to compel Orion to produce books of account to show the costs of operation before and after termination of the contract on the ground that such costs would be irrelevant.

■■ It cannot be said that the arbitrator was guilty of fraud or misconduct in selecting the method of computing damages that he did. At the very most the arbitrator's method of computation was an error in interpretation of law and it is well settled that this is insufficient ground for refusing to confirm his Award. Wilko v. Swan, 346 U.S. 427, 436–437, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co., 20 F. R.D. 359, 362 (S.D.N.Y.1957). Any refusal to require the libelant to produce certain records was not a refusal to receive relevant evidence on the merits of the controversy, but was an exclusion based on the arbitrator's considered conclusion that a determination of the cost of performing the contract was irrelevant. For this Court to refuse to confirm the Award on the ground that the

arbitrator refused to take pertinent evidence relevant to the issue of damages would in effect be forcing on the arbitrator its own conclusion as to the correct method of computation of damages, and this is not proper under the statute. See, Wilko v. Swan, supra; A. D. Juilliard & Co. v. Baitch & Castaldi, Inc., 2 Misc.2d 753, 152 N.Y.S.2d 394 (Sup.Ct. 1956).

■ In this very case the Court of Appeals has pointed out that it is not for the court to instruct an arbitrator how to compute damages. See, Orion Shipping & Trading Co. v. Eastern States Petroleum Corporation of Panama, S. A., 284 F.2d 419, 421 (2d Cir. 1960).[4]

■ The additional claim of the respondents that the arbitrator erred in not providing for an address commission payable to Eastern Panama is insufficient ground for setting aside or modifying the Award inasmuch as the Contract did not provide for an address commission and the only party entitled to claim commissions under its terms is the chartering brokerage firm of Charles R. Weber Co. If, as alleged, the respondents have an agreement with Charles R. Weber Co. to a part of the commission they may claim this part from them upon payment of the amount of the Award.

The Award as against Eastern Panama must therefore be confirmed.

### Validity of the Award as Against Signal

As previously noted, the Award provided for payment by Eastern Panama or "as the situation requires, by their guarantors, in the person of Signal Oil & Gas Company * * *." Signal was not a signatory to the Contract which embodied the arbitration provision, nor was Signal directed to be a party to the arbitration by the order of this court which commanded that the arbitration be carried out. Orion contends, nevertheless, that the award of collateral liability as against Signal should be enforced for the following reasons:

1. Eastern American, Signal's predecessor, may be considered a party to the Contract although it was not a signatory.

2. Eastern American's conduct during the performance of the Contract indicated that it was the real party in interest.

3. Eastern American exercised complete dominion over Eastern Panama.

4. Signal is estopped from denying it is bound by the arbitration award because of its inconsistent position in previous litigations when it relied on the Contract as its own; and

5. Signal assumed the defense of the arbitration proceeding and interposed defenses personal to it.

■ It is unnecessary to go into each of these arguments in detail. All of them are based on the underlying premise that Eastern Panama functioned as an instrumentality of Eastern American and hence, of Signal. In many respects Orion's characterization of the relationship between Eastern Panama and Eastern American cannot be disputed. It is clear that Eastern American exercised very substantial control over Eastern Panama, that the officers and directors of the two corporations were almost identical, that the Contract benefitted Eastern American and was in part carried out by it, and that the defense of the arbitration proceeding was in effect undertaken by Signal. All of these factors, however, are insufficient to justify the arbitrator's conclusion that Signal, as the successor of Eastern American, should be held secondarily liable for the amount of the Award. The arbitrator was limited in his functions by the order of the court which directed that the arbitration pro-

4. "Appellant also urged that if arbitration should be ordered without summary trial, the court should instruct the arbitrators how to compute Orion's damages. It is not surprising that this contention finds no judicial support, since, if accepted, it would result in a serious curtailment of the arbitrator's function, a function which, once arbitration is chosen by the parties, should not be encroached upon by the courts." 284 F.2d at p. 421.

ceed. This order directed that the arbitration proceed as between Orion and Eastern Panama and included no other party. The arbitrator had no power to subject another party to the terms of the Award, regardless of what he found to be the relationship of that party to the party who was subject to his jurisdiction.

 Title 9, U.S.C. § 10(d) provides that a United States District Court may vacate an arbitration award "where the arbitrators exceeded their powers" and § 11 of the same title provides that an award may be modified "where the arbitrators have awarded upon a matter not submitted to them * * *." The question of liability of Signal as guarantor of the Contract was not a matter submitted to the arbitrator. By including a determination on this matter in his Award the arbitrator exceeded his powers and awarded on a matter not submitted to him, and this provision of the Award must therefore be set aside. Even if Eastern American might have been ordered to submit to arbitration by a court, as an alter ego of Eastern Panama (see Fisser v. International Bank, 282 F.2d 231 (2d Cir. 1960); Chilean Nitrate Sales Corp. v. The Nortuna, 128 F.Supp. 938 (S.D.N.Y.1955)), it was beyond the powers of the arbitrator to make such a decision. See Brescia Const. Co. v. Walart Const. Co., 238 App. Div. 45, 263 N.Y.S. 13 (1st Dep't 1933). The guarantee on which the arbitrator based his decision was not submitted in evidence at the arbitration proceedings and Signal had no opportunity to submit defenses to liability under the guarantee.

Of course, if Signal is liable as a guarantor of the Contract, as the arbitrator found, the libelant is free to initiate an action against it on the guarantee, if the amount of the Award cannot be recovered against Eastern Panama.

### Conclusion

The Award of the arbitrator is modified to the extent of deleting from the Award the clause reading "or, as the situation requires, by their guarantors, in person of Signal Oil & Gas Company, as the surviving corporation of the merger between the latter and the said guarantors, in person of Eastern States Petroleum & Chemical Corporation,".

In all other respect the Award is confirmed.

So ordered.