**AMERICAN POSTAL WORKERS UNION AFL–CIO, Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE, San Francisco Bulk Mail Center, Richmond, California, Defendants-Appellees.**

No. 80–4250.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 1981.

Decided June 8, 1982.

Stewart Weinberg, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiff-appellant.

Stephen E. Alpern, Associate Gen. Counsel, Washington, D. C., for defendants-appellees; George Christopher Stoll, Asst. U. S. Atty., San Francisco, Cal., on brief.

Before WALLACE and PREGERSON, Circuit Judges, and BYRNE,* District Judge.

WALLACE, Circuit Judge:

The American Postal Workers Union (the union) appeals from a district court judgment denying enforcement of an arbitration order. The district court determined that the arbitration order compelled the United States Postal Service (Postal Service) to perform an illegal act and was therefore unenforceable. We affirm.

I

The union brought this action on behalf of Michael Murphy (Murphy), a union member discharged by the Postal Service for participation in an illegal work stoppage. The incidents which gave rise to this action are not disputed. On Friday evening, July 21, 1978, Murphy was informed that a strike would be initiated at the bulk mail facility the following morning. The next day, Murphy arrived at the facility to investigate the situation a little over an hour before his 9:00 a.m. shift began. He observed a group with picket signs gathering and moving towards the facility's main entrance. He recognized some members of the group as coworkers and others as union officers. When he inquired about the activities, he was informed that a picket line would be established, but that no one would be prevented from crossing it. Murphy, nevertheless, anticipated that there would be threats and verbal abuse directed toward workers who crossed the line and concluded that he would not attempt to enter the facility.

---

* Honorable William Matthew Byrne, Jr., United States District Judge, Central District of California, sitting by designation.

He drove to a public telephone, called the bulk mail facility, and stated that he would not report for duty as he was afraid to cross the picket line. He then returned to the main gate and commenced picketing. Murphy testified before the arbitrator that he had two reasons for joining the picketers: "I felt safer by not crossing the line. And secondly, I was one of them because I was in their union, worked with them." Murphy engaged in the picketing activities until 10:30 or 11:00 a.m. He then left the facility and did not return until the afternoon. Upon his return he learned that the strike was not union sanctioned. Because of this, Murphy decided that he would not offer further direct support.

On each of the three following days, Murphy arrived at the facility prior to the start of his scheduled shift. When, on each day, he encountered picketers, he called in to report that he was unwilling to cross the line. He then returned home without taking part in the picketing activities.

On July 27 Murphy received formal notice of his termination. Murphy testified before the arbitrator that he had observed letters distributed by the Postal Service notifying postal employees that strikes were prohibited by law. The arbitrator found that Murphy was not discharged for just cause and ordered his reinstatement with no loss of seniority rights but without back pay.

The union filed a complaint to confirm the arbitration award and secured an order to show cause why the award should not be confirmed. After a hearing, enforcement was denied and the complaint was dismissed with prejudice.

This appeal presents two questions: (1) whether the arbitrator's decision required the Postal Service to perform an illegal act, and (2) if so, whether the award is enforceable. We address the question of legality first.

## II

The arbitrator's award requires the Postal Service to reinstate Murphy. By statute, a worker may not hold a government position if the individual has participated in a strike against the government. 5 U.S.C. § 7311.[1] Appropriately, the union has not challenged the right of the government to establish such conditions of hiring and retention of employees. *See United Federation of Postal Clerks v. Blount*, 325 F.Supp. 879, 882–84 (D.C.D.C.), *aff'd*, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971). If Murphy engaged in a strike against the Postal Service, reinstatement would violate 5 U.S.C. § 7311 and thus be illegal. We must therefore determine whether Murphy did or did not strike.

The facts of this case are undisputed. Therefore, we need not decide what deference should be given to the arbitrator's findings of fact. It is clear that the arbitrator accepted as true Murphy's uncontroverted testimony of his involvement in the strike, including his uncoerced picketing activities. The arbitrator's conclusions, however, are less than precise. The arbitrator specifically determined that Murphy "abandoned the strike and took no further part in proscribed activities" after he learned that the strike was not sanctioned by the union. Additionally, the arbitrator stated that Murphy gave "active, but misconceived, support of the strike." The only logical inference which can be drawn from this language is that the arbitrator concluded that Murphy took *some* part in "proscribed activities" and that he participated in the strike prior to abandoning it. It is not necessary for an arbitrator to state the precise words that an employee "participates in a strike" in order to conclude that his employment would violate section 7311. The language used is sufficient.

---

1.  15 U.S.C. § 7311 provides, in part:
    An individual may not accept or hold a position in the Government of the United States ... if he—
    ....

(3) participates in a strike ... against the Government of the United States ....
18 U.S.C. § 1918 establishes criminal penalties for the violation of section 7311.

■ Nevertheless, the arbitrator awarded Murphy reinstatement. An award of reinstatement seems inconsistent with the conclusion that Murphy participated in the strike. The arbitrator explained the award, however, as a mitigated penalty:

Grievant's assertions that he acted under erroneous assumptions and that he subsequently abandoned the strike are convincing. The penalty of discharge is too severe in view of Grievant's potential for becoming a valuable Postal Service employee, and particularly in view of the destructive effect that sustaining the discharge would in all likelihood have upon his prospects for future employment. Given the mitigating circumstances present here, the Arbitrator is neither constrained nor persuaded to uphold termination.

In light of these statements and upon examination of the entire opinion of the arbitrator, we conclude that the award of reinstatement does not reflect any doubt in the arbitrator's mind as to whether Murphy participated in a strike. Rather, the award demonstrates the arbitrator's belief that the penalty was too severe and should be reduced. The specific award, reinstatement *without* back pay, supports our conclusion. We can conceive of no reason for which the arbitrator would have penalized Murphy had he not participated in the strike.

■ But even if the arbitrator's conclusions were not clear, a remand would not be appropriate in this case. Reversing the district court and remanding to the arbitrator would be futile unless, upon remand, the arbitrator could decide that Murphy did not participate in the strike and unless, if he so found, we would be required to defer to his conclusion. We hold that even if the arbitrator's conclusions were unclear and if, upon remand, he decided that Murphy did not participate in a strike, we could not defer to such a determination.

■ In most cases, courts must defer to an arbitrator's conclusions even where they are erroneous. *E.g., San Martine Compania de Navegacion v. Saguenay Terminals Limited*, 293 F.2d 796, 801–02 (9th Cir. 1961)

(*San Martine*). These cases involve conclusions of law with respect to such issues as contract interpretation, *id.* (cancellation provision and course of dealings pursuant thereto), and damages for breach, *MSP Collaborative Developers v. Fidelity and Deposit Company of Maryland*, 596 F.2d 247, 251–52 (7th Cir. 1969). When the cases and issues are of this nature, the arbitrator's conclusions simply resolve the competing interests of two opposing private parties, and courts are bound to defer to the conclusions of the arbitrator *unless* the arbitrator has manifestly disregarded the law.

■ We believe that a conclusion that Murphy did not strike would constitute manifest disregard of the law. *See Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953); *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972); *San Martine, supra*, 293 F.2d at 801. *See also Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 572–73 (2d Cir. 1968). The facts show that Murphy understood that the picketers were on strike. While he believed the strike to be union sanctioned when, in fact, it was not, he still understood that the activity was a strike. He did not simply refuse to cross the picket line out of fear; he joined the picketers. While his participation in the picketing was short-lived, it was not non-existent. Murphy's picketing with co-workers during scheduled work hours constituted a concerted work stoppage and a strike under 5 U.S.C. § 7311. *See United Federation of Postal Clerks v. Blount, supra*, 325 F.Supp. at 884–85; *Tennessee Valley Authority v. Local No. 110 of Sheet Metal Workers Int'l Ass'n*, 233 F.Supp. 997, 1000 (W.D.Ky.1962). We have found no authority to suggest that Congress intended the statute to cover only strikes where the striker correctly ascertains the strike leadership, only strikes which involve something more than picketing and concerted work stoppage, or only strikes of a certain duration. We therefore conclude that, should the arbitrator decide that Murphy did not participate in a strike, he would do so in manifest disregard of the law. In that

case, the arbitrator's conclusions would not be entitled to the deference ordinarily accorded and would not bind this court. *See San Martine, supra,* 293 F.2d at 801.

■ Furthermore, even if the error would not be so clearly contrary to the law as to constitute manifest disregard of the law, we could not defer to a conclusion by the arbitrator that Murphy did not strike and should be reinstated. This case requires more than the resolution of the competing interests of two opposing private parties. It also requires an adjudication of the coverage and application of a federal law passed by Congress to insure a stable work force for the government and agencies of the United States. We therefore cannot treat the issues raised by this dispute merely as matters of conflict between an employer and its employees. In light of the undisputed facts of this case, we could not confirm an award of arbitration simply because the arbitrator stated that Murphy did not strike. To confirm such an award in this case would be to confer upon the arbitrator unreviewable power to construe and apply section 7311. In his original decision, the arbitrator concluded that the penalty of discharge was too severe a sanction because Murphy was young, misinformed, and potentially valuable as an employee. The choice of sanctions, however, is not arbitrable; that choice has already been made by Congress. We cannot empower the arbitrator to nullify the mandates of Congress simply by stating that an individual did not strike when, as here, his actions, as presented in undisputed facts, constitute a strike for purposes of the section.

■ The union also argues that we should review the arbitrator's decision only by reference to an October, 1979, letter award and that we should disregard the December formal award and its accompanying opinion. The letter award merely stated that Murphy was dismissed without cause, reinstatement was required, and a full opinion would follow. In effect, the union argues that we should disregard what the arbitrator said about what happened in this case, *i.e.,* his findings with respect to

Murphy's activities. We reject the union's argument. Although an arbitrator is not required to make formalized findings nor to offer reasons for his decisions, when he does so, we need not ignore them. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

■ We conclude that Murphy participated in a strike against the Postal Service. His reinstatement would violate 5 U.S.C. § 7311. That is the only conclusion which the facts of this case can support. In light of these facts, remand would be futile because, for reasons given above, we could not accord judicial deference to any other conclusion by the arbitrator. We therefore turn to the question of enforceability.

### III

■ Federal courts will not undertake plenary review of the merits of an arbitration award. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 596, 80 S.Ct. at 1360. Review of arbitration awards is more limited than review of trial court decisions. An arbitrator's award will not be vacated because of erroneous findings of fact or misinterpretations of law. *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama,* 206 F.Supp. 777 (S.D.N.Y.1962), *aff'd,* 312 F.2d 299 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963). *See also United Steelworkers of America v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 598–99, 80 S.Ct. at 1361–62. Where the parties have bargained for an arbitrator's construction of their contract, a court will not overrule the arbitrator simply because its interpretation of the contract differs from his. Thus, a court enforces the contract of the parties who have agreed to abide by the arbitrator's decision.

Nevertheless, the purpose of federal arbitration law is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12, 87 S.Ct. 1801, 1806 n.12, 18 L.Ed.2d 1270 (1967). "It is no less true in suits brought ... to enforce arbitration awards than in other lawsuits that the 'power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States.'" *Local 453, International Union of Electrical, Radio & Machine Workers v. Otis Elevator Co.,* 314 F.2d 25, 29 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963), *quoting Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 852–853, 92 L.Ed. 1187 (1948).

It is a general principle of contract law that courts will not enforce contracts requiring the performance of an illegal act. *Northwest Airlines, Inc. v. Alaska Airlines, Inc.,* 351 F.2d 253, 256 (9th Cir. 1965); *Naseef v. Cord, Inc.,* 90 N.J.Super. 135, 142, 216 A.2d 413, 417, *aff'd,* 48 N.J. 317, 225 A.2d 343 (1966). This principle applies to all kinds of contracts, including contracts under which parties agree to submit their grievances to arbitration and to abide by arbitrators' decisions. *See Amalgamated Transit Union v. Aztec Bus Lines,* 654 F.2d 642 (9th Cir. 1981) (arbitration award requiring a party to violate the law is against public policy and cannot be enforced); *Glendale Manufacturing Co. v. Local No. 520, International Ladies' Garment Workers' Union,* 283 F.2d 936 (4th Cir. 1960), *cert. denied,* 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961) (employer cannot be forced to comply with an arbitration award requiring the commission of an unfair labor practice). *See also Minkoff v. Scranton Frocks, Inc.,* 181 F.Supp. 542, 547

(S.D.N.Y.), *aff'd,* 279 F.2d 115 (1960); *Rushton v. Howard Sober, Inc.,* 198 F.Supp. 337, 345 (W.D.Mich.1961). We therefore conclude that the courts cannot enforce an arbitrator's award if it requires the performance of an illegal act.

We have determined that reinstatement of Murphy by the Postal Service would violate 5 U.S.C. § 7311. The district judge properly denied enforcement of the arbitrator's award and properly dismissed with prejudice the complaint to confirm the arbitration award.

AFFIRMED.

PREGERSON, Circuit Judge (dissenting):

I respectfully dissent. Remand to the arbitrator for clarification of his opinion is the proper course to follow here.

The majority first argues that a remand is unnecessary because "[t]he only logical inference which can be drawn" from the language of the arbitrator's opinion is that the arbitrator found Murphy to have "participated" in the unlawful strike. Maj. Op. at 1283. It then contends that even if it is not clear that the arbitrator drew this conclusion, remand is still inappropriate because the facts admit of no contrary conclusion. Neither of these claims is justified.

I

According to the majority, the arbitrator ordered Murphy reinstated solely because he believed mitigating factors made dismissal an overly harsh penalty, and not because of any doubt as to whether Murphy participated in the strike. Yet the arbitrator's opinion nowhere states a finding of participation by Murphy. The language that the majority reads as implying such a finding does not, in fact, compel any such conclusion.[1] Indeed, the arbitrator's find-

---

1. Thus, the majority seizes on the arbitrator's statement that Murphy gave "active, but misconceived, support of the strike." Yet *support* for a strike quite obviously does not entail *participation* in the strike, since even persons who are not employees of the struck concern can support the strike (e.g., by refusing to cross picket lines or donating money to the strikers). The majority also points to the arbitrator's determination that Murphy "abandoned the strike" after learning it was not authorized by his union. This, too, does not necessarily imply that Murphy initially "participated" in the strike. Had Murphy merely attended a meet-

ing that Murphy was fired without just cause is evidence that the arbitrator concluded that Murphy had *not* participated in the strike.[2] So is the language in which the arbitrator couched his conclusion: "the Arbitrator is neither constrained nor persuaded to uphold the termination." This language can most plausibly be interpreted as indicating that the arbitrator believed, not merely that mitigating factors counselled against upholding Murphy's discharge—so that the arbitrator was not "persuaded" to uphold it—but that Murphy had not violated 5 U.S.C. § 7311 by participating in the strike—so that the arbitrator was not "constrained" to uphold the discharge.

At best, therefore, the arbitrator's opinion is ambiguous on the crucial issue—whether Murphy participated in the strike. That ambiguity calls for a remand to the arbitrator to permit him to clarify his opinion, as both this circuit[3] and others[4] have recognized. Yet the majority not only refuses to seek such clarification, but chooses precisely that interpretation of the arbitrator's ambiguous opinion which renders the award unenforceable. That procedure directly contradicts our recognition that "[t]he Supreme Court ... has consistently required us to favor the arbitrator's decision when his opinion is subject to several interpretations." *IAM Local 389 v. San*

*Diego Marine Construction Corp.*, 620 F.2d 736, 739 (9th Cir. 1980).[5]

A remand would give the arbitrator the opportunity to clear up the confusion generated by the conflicting interpretations to which his opinion is subject. Possibly he would explain that—as the majority believes—he meant to find that Murphy had participated in the illegal strike. In that case, Murphy's discharge could be upheld; the government would scarcely be significantly prejudiced by the delay. Possibly, however, the arbitrator would explain that in his opinion Murphy did not "participate" in the strike. There would then be no justification for firing Murphy; the order reinstating him would be valid and enforceable, and he would be spared the stigma of discharge and disqualification from federal employment. That, indeed, was what happened in a case squarely on point, *United States Postal Service v. National Post Office Mail Handlers Union*, Civil No. 79–1967 (D.N.J. April 3, 1980). That case, like the one before us, involved a postal employee, discharged for alleged participation in an illegal strike, whose reinstatement was ordered by an arbitrator. The arbitrator's opinion contained greater evidence of strike participation than does the opinion in the instant case—in fact, it explicitly labeled the discharged worker a "participant in the strike." Yet, because the arbitrator had also found the employee's discharge to be

ing to discuss a proposed strike, and then decided not to take part in it, one could correctly say that he had "abandoned the strike" but not that he had ever "participated" in it.

2. To conclude, despite this evidence, that the arbitrator believed Murphy had participated in the strike is to impute to the arbitrator either an inexplicable failure to realize that, by virtue of 5 U.S.C. § 7311, striking was "just cause" for dismissal, or a conscious desire to flout the law.

3. *Hanford Atomic Metal Trades Council v. General Electric Co.*, 353 F.2d 302, 307–08 (9th Cir. 1965).

4. *Burkart Randall v. Lodge 1076, IAM*, 648 F.2d 462, 468 (7th Cir. 1981); *Bell Aerospace Co. v. Local 516, UAW*, 500 F.2d 921, 924 (2nd Cir. 1974); *San Antonio Newspaper Guild Local 25 v. San Antonio Light Division*, 481 F.2d 821, 825 (5th Cir. 1973); *IBEW Local 369 v. Olin*

*Corp.*, 471 F.2d 468, 472–73 (6th Cir. 1972); *Local 719, American Bakery & Confectionery Workers v. National Biscuit Co.*, 378 F.2d 918, 926 (3rd Cir. 1967); *cf. Locals 2222, 2320–2327, IBEW v. New England Telephone & Telegraph Co.*, 628 F.2d 644, 647–49 (1st Cir. 1980) (dispute not reached in arbitration proceeding, but encompassed within original submittal, requires remand to original arbitrators).

5. The Supreme Court has cautioned that "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). *See also In re Arbitration Between Aloha Motors, Inc. and ILWU Local 142*, 530 F.2d 848, 849 (9th Cir. 1976).

without just cause, the district court perceived an ambiguity in the arbitrator's opinion and remanded for clarification. The arbitrator explained that he had not meant to find that the worker had "participated" in the strike for purposes of applying 5 U.S.C. § 7311, and the district court then upheld the award ordering reinstatement. I can perceive no reason why the remand procedure adopted by the district court in the New Jersey case is not equally appropriate here.

## II

The majority, however, argues that a remand is inappropriate here even if the arbitrator's opinion is ambiguous. According to the majority, it is so clear that Murphy participated in the strike that a contrary finding on remand would constitute "manifest disregard of the law" by the arbitrator and would thus merit no judicial deference.

The majority's appeal to the principle that "manifest disregard of the law" invalidates an arbitrator's decision is surprising. I have found not a single case in which this circuit has ever applied that principle to overturn an arbitration award.[6] Indeed, we have indicated that it is difficult even to understand just what "manifest disregard of the law" means. *San Martine Compania de Navegacion v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 n.4 (9th Cir. 1961). At the very least, it "must be something beyond and different from a mere error in the law or failure on the part of the arbitrator to understand or apply the law," *id.* at 801, since "[i]t is a truism that an arbitration award will not be vacated for a mistaken interpretation of law." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972); *accord, Raytheon Co. v. Rheem Mfg. Co.*, 322 F.2d 173, 182 (9th Cir. 1963).[7] Since it is so difficult to determine what "manifest disregard" means, and since whatever it is it must transcend misinterpretation or misapplication of the law, it is astonishing that the majority can confidently assert that only through "manifest disregard of the law" could the arbitrator conclude that Murphy did not participate in the strike.

In fact, however, the majority does not rest on this assertion. Even if a finding of non-participation would not constitute manifest disregard of the law, we are told, such a finding would still deserve no judicial deference. For—and here at last we have the crux of the majority's opinion—"[w]e cannot empower the arbitrator to nullify the mandates of Congress simply by stating that an individual did not strike when, as here, his actions, as presented in undisputed facts, constitute a strike." Maj. Op. at 1285.

The majority's basic position, then, is not that the arbitrator unambiguously found Murphy to have participated in the strike, nor that a contrary conclusion would require "manifest disregard of the law." It is, quite simply, that the majority has assumed the role of deciding whether Murphy participated in the strike, and has decided that he did. With all due respect, it is for the arbitrator, not this court, to make that decision. Consequently, I must dissent

---

**6.** Significantly, when the majority declares that "a conclusion that Murphy did not strike would constitute manifest disregard for the law," Maj. Op. at 1284, Slip Op. at 2467, it cites four cases notable chiefly for their irrelevance. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972); *Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568 (2d Cir. 1968); *San Martine Compania de Navegacion v. Saguenay Terminals Ltd.*, 293 F.2d 796 (9th Cir. 1961). In none of these cases was an arbitration award set aside for manifest disregard of the law (or for any other reason). Moreover, none of these cases arose in a labor context, in which extreme deference to an arbi-

trator's decisions is mandated. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *Riverboat Casino, Inc. v. Local Joint Executive Board*, 578 F.2d 250, 251 (9th Cir. 1978); *Holly Sugar Corp. v. Distillery Workers Int'l Union*, 412 F.2d 899, 902–03 (9th Cir. 1969).

**7.** At least one court has stated that manifest disregard can be shown only by establishing that the arbitrator understood and correctly stated the law and then proceeded to ignore it. *Reynolds Securities, Inc. v. Macquown*, 459 F.Supp. 943, 945 (W.D.Pa.1978).

from the unwarranted and unjust disposition which the majority arrives at in this case.