**LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, Culinary Workers Union, Local 226, and Bartenders Union, Local 165, Plaintiffs-Counter-Defendants/Appellees,**

v.

**RIVERBOAT CASINO, INC. d/b/a Holiday Hotel & Casino; Showboat Operating Co., d/b/a Showboat Hotel, Casino & Bowling Center; MGM Grand Hotel—Las Vegas, Inc.; E.G. & H., Inc., d/b/a Las Vegas Club, Defendants-Counter-Claimants/Appellants.**

No. 86–2104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1987.

Decided May 14, 1987.

Richard G. McCracken, San Francisco, Cal., for plaintiffs-counter-defendants/appellees.

Kenwood C. Youmans and Gregory N. Karasik, Los Angeles, Cal., for defendants-counter-claimants/appellants.

Before WALLACE, SKOPIL and CANBY, Circuit Judges.

SKOPIL, Circuit Judge:

Defendants Riverboat Casino, Inc.; Showboat Hotel, Casino and Bowling Center; MGM Grand Hotel-Las Vegas, Inc.; and E.G. & H., Inc. ("Employers") appeal a decision of the district court confirming an arbitral award in favor of plaintiffs Local Joint Executive Board of Las Vegas; Culinary Workers Union, Local 226; and Bartenders Union, Local 165 ("Union"). We affirm.

## FACTS AND PROCEEDINGS BELOW

The dispute arises out of a strike which took place in April and May of 1984. The strike involved approximately twenty hotels. All are members of the Nevada Resort Association. During the strike all the hotels remained open. Many non-striking employees were either promoted or transferred to different positions, shifts, or stations, and additional temporary and permanent staff was hired.

After the strike was settled, the employees returned to work. When they re-

turned, many employees were not permitted to resume their former shifts and stations. Others were laid off though some non-striking workers with less seniority retained their jobs. According to the Union, these acts of the Employers violated the oral settlement agreement.

The Union and twelve hotels then agreed, pursuant to a written arbitration agreement, to submit their differences to arbitration. The following issues were to be resolved by the arbitral panel: (1) whether the Employers and the Union had agreed to a strike settlement agreement; (2) if so, what the terms of the agreement were; and (3) whether any of the Employers' practices regarding reinstatement of striking employees violated the terms of the agreement.

The arbitration agreement set limits on the authority of the panel. The agreement stated in relevant part:

> 7. In the event the majority of the arbitration panel finds that any or all of the Employers party to this Memorandum of Agreement did agree to a strike settlement agreement with the Union, the panel shall have no authority, jurisdiction or power to amend, modify, nullify or add to the provisions of such strike settlement agreement.
> 8. The arbitration panel shall have no equitable or interest authority or jurisdiction. Its sole authority and jurisdiction is specifically set forth in this Memorandum.

After an arbitration proceeding, the arbitrators determined that the parties had reached a strike settlement agreement requiring the hotels to reinstate striking employees in their previous positions. The arbitrators found that an implied contract existed regarding reinstatement. They concluded that "the Employers' acceptance of the Union proposals was manifested by both their silence at the negotiating table and also by their subsequent conduct." The arbitrators also noted that the hotels benefited by the removal of the picket line. The arbitrators rejected the Employers' argument that two officers of the International Union were agents for the Union.

They concluded that conversations between the Employers' negotiator and these two officers were not sufficient to put the Union on notice that the Employers had taken a position contrary to the terms of the strike settlement agreement.

The Union instituted legal action to confirm and enforce the award. The Employers counterclaimed, arguing that the award should be vacated. They maintained that the arbitrators exceeded the scope of the authority granted to them by the arbitration agreement. In addition, they argued that the arbitrators manifestly disregarded fundamental principles of law, violated federal labor policy, and improperly took judicial notice of relevant facts without considering the parties' actual negotiating conduct. The district court confirmed the award. The Employers appeal.

### Discussion

### I.

■ This court reviews *de novo* the district court's grant of summary judgment confirming the arbitration award. *See New Meiji Market v. United Food and Commercial Workers, Local 905*, 789 F.2d 1334, 1335 (9th Cir.1986).

The district court's review of the arbitral award is, however, limited. *Id.* In the *Steelworkers Trilogy*, the Supreme Court set a standard that permits only a limited review of an arbitrator's decision. *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–85, 80 S.Ct. 1347, 1352–54, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). *See also Broadway Cab Co-op v. Teamsters & Chauffeurs Local 281*, 710 F.2d 1379, 1382 (9th Cir.1983). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Enterprise Wheel & Car Corp.*, 363 U.S. at 596, 80 S.Ct. at 1360. *See also Orange Belt Dis-*

*trict Council of Painters v. Maloney Specialties, Inc.*, 639 F.2d 487, 490 (9th Cir. 1980). It is not the court's role to determine whether the arbitrator has reached the same result the court would have reached. *See American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. at 1346. *See also Edward Hines Lumber Co. v. Lumber & Sawmill Workers Local 2588*, 764 F.2d 631, 634 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1661, 90 L.Ed.2d 203 (1986).

The district court may overturn an arbitral award if the award does not "draw[ ] its essence from the collective bargaining agreement." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. For example, if the arbitrators exceeded their powers, the award may be overturned. *See* 9 U.S.C. § 10(d); *Sheet Metal Workers Int'l Assoc., Local 420 v. Kinney Air Conditioning*, 756 F.2d 742, 744 (9th Cir.1985). The court may also overturn an award if the arbitrators reached a decision that is contrary to the law or public policy. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (court may overturn an award which is contrary to a well defined and dominant public policy); *see also George Day Construction v. United Brotherhood of Carpenters*, 722 F.2d 1471, 1477 (9th Cir.1984) (court may overturn "an award which actually violates the law or any explicit, well defined and dominant public policy"); *American Postal Workers v. U.S. Postal Service*, 682 F.2d 1280, 1284 (9th Cir.1982) (court may overturn an award because arbitrators manifestly disregarded the law), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

## II.

■ The Employers argue the arbitrators exceeded their authority in concluding a strike settlement agreement was reached between the Employers and the Union. They rely on the arbitration submission agreement permitting the arbitrators to use legal but not equitable principles in determining whether an agreement had been reached. The Employers argue "acceptance by silence" is an equitable principle and the Arbitrators improperly relied on this principle to find the parties had formed a contract. They suggest that although the principle might establish equitable estoppel, it does not create an implied contract.

The Employers' claim is without merit. Acceptance by silence is not exclusively an equitable principle. Acceptance by silence is an integral part of the objective theory of contracts. *See* A. Corbin, Corbin on Contracts § 75A (Supp.1984). The objective theory of contracts is based upon an *analogy* to estoppel. *See, e.g.*, 1 S. Williston, A Treatise on the Law of Contracts § 98 (3d ed. 1957). We conclude that the arbitrators' decision to rely on the principle of acceptance by silence must be respected.

## III.

The Employers also make several claims which dispute the reasoning used by the arbitrators and the arbitrators' findings. We have only limited authority to review these claims. *See, e.g., Gateway Structures v. N. Cal. Counties Conference*, 779 F.2d 485, 489–91 (9th Cir.1985) (enforcing an award which does not violate a law or public policy). "An arbitrator's award will not be vacated because of erroneous findings of fact or misinterpretations of law." *American Postal Workers*, 682 F.2d at 1285. An award may be overturned only if it violates a public policy which is "well defined and dominant, and ... ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace & Co.*, 461 U.S. at 766, 103 S.Ct. at 2183 (*quoting Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)); *see also Orange Belt District Council of Painters v. Kashak*, 774 F.2d 985, 990 (9th Cir.1985).

### A. Misapplication of Law

■ The Employers argue that the arbitrators manifestly disregarded the principle of apparent authority, the principle that an agent's knowledge should be imputed to its principal, and the principle of acceptance by silence. The Employers suggest that be-

cause two officers of the international union had apparent authority to negotiate for the Union, the Employers were not required to give notice of their objections to anyone in addition to these two officers. They also maintain that because the officers were agents of the Union, the information the officers received from the Employers must be imputed to the Union. Finally, they argue that the arbitrators misapplied the law by finding that the Employers' acceptance of benefits that accrued when the strike ended constituted an acceptance by silence.

The Employers' arguments must fail. Even though "the arbitrators' view of the law might be open to serious question, ... [an award] ... will not be set aside by a court for error either in law or fact, ... if the award contains the honest decision of the arbitrators, after a full and fair hearing of the parties." *Coast Trading Co. v. Pacific Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir.1982) (citations omitted). The arbitrators considered the common law principles raised by the Employers. The fact that they applied them differently than we might have applied them does not constitute a manifest disregard of the law.

### B. Freedom of Contract

The Employers argue that there was no meeting of the minds during the contract negotiations and that because the arbitrators found a contract existed they violated the fundamental public policy of freedom of contract. As support, they rely on *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 108, 90 S.Ct. 821, 826, 25 L.Ed.2d 146 (1970), which held that the National Labor Relation Act's policy of freedom of contract requires parties to bargain collectively in good faith, but does not compel either party to agree to a proposal. An analogous principle is, according to the Employers, that there can be no contract unless "a meeting of the minds has occurred in terms of the expression of agreement by both parties as to all the substantive issues." *United Food & Commercial Workers Union v. NLRB*, 772 F.2d 421, 426 (8th Cir.1985).

■ We reject the contention that prior decisions of the NLRB prevented the arbitrators from relying on the objective theory of contracts. Our circuit has upheld arbitral awards which directly conflict with prior NLRB decisions. *See, e.g., Local Joint Executive Board of Las Vegas v. Royal Center, Inc.*, 796 F.2d 1159, 1164 (9th Cir. 1986) (holding that issue of whether sale of a business was a bona fide, arm's-length transaction was arbitrable even though NLRB had already ruled on the issue) *cert. denied,* —— U.S. ——, 107 S.Ct. 881, 93 L.Ed.2d 835 (1987); *Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275, 1279–80 (9th Cir.1982) (holding NLRB's refusal to issue a complaint does not bar Union from seeking relief through arbitration). Other decisions have also applied the objective theory of contracts in analyzing arbitral awards. *See, e.g., Hospital & Institutional Workers, Local 250 v. Pasatiempo Development Corp.*, 627 F.2d 1011, 1012 (9th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1362, 67 L.Ed.2d 344 (1981). The application by the NLRB of the meeting of the minds test did not prevent the arbitrators from applying the objective theory of contracts.

■ While we agree that we must vacate an arbitral award which conflicts with a fundamental public policy, the policy relied upon by the Employers is not applicable to our case. In *H.K. Porter Co.* the Supreme Court found only that the policy was fundamental to the National Labor Relations Act. Compliance with the National Labor Relations Act is not at issue here. In addition, the principle articulated in *H.K. Porter Co.* concerned actions brought by the government to compel parties to agree. In this case only the arbitrators, a private party, have interfered with the parties' freedom of contract. Finally, in this case the parties specifically submitted to arbitration the question of whether or not there was a contract. To now conclude that the Employers have been denied their freedom of contract would require that the court ignore the submission agreement, a contract into which the parties freely entered. We find no basis for vacating the award.

## C. Judicial Notice

The Employers' final argument is that the award must be vacated because the arbitrators improperly relied on their "own perception of the collective bargaining process" rather than on the actual words and conduct of the parties. Because of the alleged failure to follow the words and conduct of the parties, the Employers maintain that the award fails to "draw[ ] its essence from the collective bargaining agreement." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. They argue that the arbitrators took "judicial notice" of the proposition that "parties to collective bargaining agreements usually accept contract proposals by virtue of silent acquiescence." The Employers suggest that even if it was proper to take judicial notice of this statement "as a general proposition," it was improper to apply the proposition in this context.

The Employers' claim must be rejected. It is inappropriate to examine whether or not the court would have reached the same conclusion as the arbitrators regarding whether or not a contract existed. The court's role is only to ensure that "the award represents a plausible interpretation of the contract in the context of the parties' conduct. . . ." *Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas*, 578 F.2d 250, 251 (9th Cir.1978) (quoting *Holly Sugar Corp. v. Distillery Union*, 412 F.2d 899, 903 (9th Cir.1969)). The arbitrators were hired to determine whether or not the parties had entered into a contract. They examined the words and conduct of the parties and concluded that a contract exists. The arbitrators drew on their personal knowledge of how contract negotiations function, but there is no evidence that they inappropriately applied their notions of negotiating conduct in contradiction to the facts that were presented to the arbitrators.

## CONCLUSION

The Employers and Union submitted to arbitration the issue of whether they entered into a strike settlement agreement. The arbitrators examined the factual situa-

tion and using accepted principles of contract law concluded that a contract had been reached. The Employers now complain that the arbitrators exceeded the scope of their authority and that they incorrectly analyzed both prevailing principles of law and the factual situation. While the Employers' arguments show that the arbitrators were faced with a difficult factual situation, they do not demonstrate that the arbitrators made any error that would justify vacating the award.

Affirmed.