369 So.2d 188 (1979)
CITY OF NEW ORLEANS, Ernest N. Morial, Reynard J. Rochon and James C. Parsons
v.
POLICE ASSOCIATION OF LOUISIANA, TEAMSTERS LOCAL NO. 253, Vincent J. Bruno, Peter L. Dale, Anthony W. Cannatella, David S. Bordelon, John W. Willoughby, Donald S. Lally, Louis J. Shaw, III, and all other Employees of the Department of Police of the City of New Orleans, whose names are not known at this time, who are acting in concert with the other named Defendants herein.
No. 10368.
Court of Appeal of Louisiana, Fourth Circuit.
March 1, 1979.
Donald A. Hoffman, City Atty., Thomas P. Anzelmo, Sr., Galen S. Brown, Deborah C. Ziegler, Asst. City Attys., for plaintiffs.
Sidney M. Bach, New Orleans (John W. Ormond, New Orleans, of counsel), for defendants.
Many, Lococo & Dwyer, Ralph D. Dwyer, Jr., New Orleans, for intervenor (Civil Service Commission of The City of New Orleans).
Sanders, Downing, Kean & Cazedessus, R. Gordon Kean, Jr., Baton Rouge, for amicus curiae (Louisiana Municipal Association).
Before REDMANN, LEMMON and GULOTTA, JJ.
PER CURIAM.
The Civil District Court preliminarily enjoined a strike by a union of police officers against the City of New Orleans, reasoning that the police have no right to strike. We granted a writ of review to decide that question because no Louisiana statutory law or decision of an appellate court has done so.
In other states, every court that has considered the question has decided that, in the absence of a statute governing public employee strikes, public employees have no right to strike or engage in work stoppages. An Annotation at 37 A.L.R.3d 1147, 1156-1157 (1971), lists three columns of cases from Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, North Dakota, Oklahoma, Rhode Island, Tennessee, Washington and West Virginia as applying or at least recognizing the rule that public employees are denied the right to strike even in the absence of an express *189 statutory prohibition. The United States Court of Appeals for the Fourth Circuit, in Bennett v. Gravelle, 1971, 4 Cir., 451 F.2d 1011, cert. dismissed R. 60, 1972, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692, has also reached that conclusion.
Although the case before us does not present the broad question of the right of any public employee to strike, we hold that a strike by police officers must be prohibited.
In the case of a police strike, the concerted refusal to work by the peace-keeping employees of the government not only leaves society defenseless against crime but even inspires lawlessness.[1]
No comparable harm can come to society in the case of a strike against ordinary private business. Striking employees of a private business can bring their employer to his knees without endangering the public health and safety, while striking police officers cannot.
More swiftly and surely than any other, a strike by law enforcement officers takes law enforcement and consequently the rule of law itself from our society. A police strike begins as anarchy and leads towards terrorism.
Even the American Federation of State, County and Municipal Employees, AFL-CIO, in its 1966 statement condemning as unfair one-sidedness the prohibition of public strikes, supported a different treatment for police: "AFSCME insists upon the right of public employeesexcept for police and other law enforcement officersto strike."[2] In respect to their threat to society's existence, for example, the difference *190 between strikes by police and by museum employees is obvious. Society can tolerate the temporary closing of a museum, but not the suspension of law.
We agree with the union's view that the right of government employees to freedom of speech and peaceably to assemble and to petition government for redress of grievances, U.S.Const. amend. I, La.Const. art. 1 §§ 7 and 9, exists in respect to their relations with the government as employer; see Tassin v. Local 832, Nat. U. of Police Off. of AFL-CIO, La.App. 4 Cir. 1975, 311 So.2d 591. Government employees can, however, as they did in Tassin, speak freely and peaceably assemble and petition their government without striking. To enjoin striking by police does not deprive them of those constitutional rights.
Finally, we recognize that the absence of the threat of strike, which is the employees' ultimate weapon in labor negotiations, places the union at a disadvantage in collective bargaining. Nevertheless, the overriding concern for public safety, health and welfare requires that strikes by policemen be declared illegal.
Accordingly, the judgment preliminarily enjoining the strike by defendants is affirmed.[3]
NOTES
[1] The experiences of Boston in 1919 and Montreal in 1969 in police strikes are reported from contemporary sources in Burton and Krider, The Role and Consequences of Strikes by Public Employees, 1970, 79 Yale L.J. 418, 433-434: breaking into department stores and looting by "good-looking men, mature in years, bearing all the earmarks of a lifetime of sane observance of property rights"; "I don't mean hoodlums and habitual lawbreakers, I mean just plain people committed offenses they would not dream of trying if there was a policeman standing on the corner." Burton and Krider's conclusion, from their factual observation that the deterioration of public order occurs almost immediately (citing other Boston and Montreal statistics), was that police strikes should be expressly outlawed in advance: "There is simply no time to seek an injunction."

While arguing for the right to strike by public employees in employment less essential to the continuation of civilized society, other scholars agree with Burton and Krider that "[f]or some public sector services, howevernamely police and fire protectionthe probability that a strike will result in immediate danger to public health and safety is so substantial that strikes are almost invariably inappropriate." Id. at 437. "[N]o one would seriously argue that such a strike should be permitted." Comment, Labor Problems in Public Employment, 1966-7, 61 Nw.U.L.Rev. 105, 117. "Services of policemen, firemen, and possibly sanitationmen should be classified as `essential' [to the public health and safety], and the rigid prohibition against striking should be enforced." Comment, Public Employees: No Right to Strike, 1971, 38 Tenn.L.Rev. 403, 421. "[A]s to those areas of public employment controlling public health and safety ["policemen, firemen, health officials and others similarly situated"], the right to strike against the government should be denied." Comment, Right of Public Employees to Strike, 1966-7, 16 DePaul L.Rev. 151, 164.
[2] International Executive Board, AFSCME, AFL-CIO, Policy Statement on Public Employee Unions: Rights and Responsibilities, quoted in Comment, Public EmployeesThe Right to Organize, Bargain and Strike, 1970, 19 Cath.U. L.Rev. 361. Burton and Krider, supra, 79 Yale L.J. at 433, add that any AFSCME "local of police officers that engages in a strike or other concerted refusal to perform duties will have its charter revoked."

In our review of the legal literature on the question we have also been assisted by Bernstein, Alternatives to the Strike in Public Labor Relations, 1971, 85 Harv.L.Rev. 459; Kheel, Strikes and Public Employment, 1969, 67 Mich. L.Rev. 931; Haemmel, Government Employees and the Right to StrikeThe Final Necessary Step, 1971, 39 Tenn.L.Rev. 75; Vaughn, Principles of Civil Service Law, 1976, § 9.4; Burton, Can Public Employees Be Given the Right to Strike?, 1970, 21 Lab.L.J. 472; White, The Right to Strike in the Public Sector, 1970, 21 Lab.L.J. 479; Bers, The Right to Strike in the Public Sector, 1970, 21 Lab.L.J. 482; Comment, The Strike and Its Alternatives: The Public Employment Experience, 1975, 63 Ky.L.J. 430; Comment, Prohibition Revisited: The Strike Ban in Public Employment, 1969 Wis.L.Rev. 930; Comment, Public Employee Labor Organization, 1975, 21 Loy.L.Rev. 911; and Note, Public Employee Strikes, 1969, 21 S.C.L.Rev. 771.
[3] The union, in argument, misinterprets the latter part of the judgment, beginning "that the defendants named herein immediately take. . . ." The union argues that that part of the judgment directs individual police officers to return to work. In our view, the proper construction of that part of the judgment is that it only orders the union and its named officers to direct the members to return to work. The judgment orders individual police officers to stop striking, but it does not and can not order any individual police officer to return to work.