AUGUSTINE, Judge.
The paramount issue in this case is whether a federal employee’s participation in an illegal strike constitutes “misconduct”, thus disqualifying that employee for unemployment insurance benefits under La.R.S. 23:1601(2).[1]
The appellants — Paulette Charbonnet, M.N. Washington, Larry Williams, and L.L. Coignet, Jr. — are former air traffic controllers employed by the Federal Aviation Administration, an agency of the United States of America. On August 3, 1981, the Professional Air Traffic Controllers Organization (PATCO) began a nationwide strike against the F.A.A. By order of the President of the United States, these striking employees were instructed to return to work within forty-eight hours or face dismissal. Appellants were among the many PATCO members who refused to comply with the president’s order and were subsequently fired.
Appellants thereafter sought unemployment benefits from the Louisiana Department of Employment Security. The administrator denied their claims, finding that the claimants had been discharged for misconduct, namely, participating in an illegal strike against the United States Government.[2]
*1082 The appellants sought further review, first, before the Appeals Referee, then the Board of Review, and finally, the Civil District Court for the Parish of Orleans. At every level of review, the administrator’s finding of misconduct was affirmed. The case is now before this court for our consideration of the legal issue posed at the outset of this opinion.
Appellants’ argument for reversal of the trial court’s judgment proceeds along the following lines:
The claimants contend, first, that they were fired because of their participation in a “labor dispute”,[3] and that their application for benefits is therefore governed by La.R.S. 23:1601(4), which provides—
“An individual shall be disqualified for benefits:
[[Image here]]
(4) For any week with respect to which the administrator finds that his unemployment is due to a labor dispute ...”
Appellants maintain, further, that National Gypsum Co. v. Administrator, La. Dept. of Employment Security, 313 So.2d 230 (La.1975) stands for the proposition that when an employer refuses to allow its employees to return to work and begins hiring replacements, the labor dispute is no longer in active progress and, thereafter, those employees who are “locked out” are entitled to unemployment benefits. Appellants argue that the labor dispute in which they were involved ended on August 6, 1981, when the F.A.A. began firing strikers and hiring replacements. They contend that the F.A.A.’s subsequent refusal to rehire them constituted a “lock out”, and that under National Gypsum, supra, they are entitled to unemployment compensation.
We think, however, that National Gypsum is distinguishable from the case at bar in several important respects. There, the employer’s undisputed lock-out gave rise to this question: Is the Unemployment Compensation Act intended to enforce a lockout by the employer by denying unemployment benefits to employees who are available for work, but who are denied it by their employer?
Answering in the negative, the Court held that unemployment due to a lock-out by the employer is not caused by “a labor dispute which is in active progress ”. La. R.S. 23:1601(4). Accordingly, the Court also held that lock-out employees are entitled to unemployment compensation.
In reaching that conclusion, the Court emphasized that the plaintiff employees were “unable to work through no fault of their own”, and that a lock-out is an aggressive form of economic coercion which should not be encouraged. The Court also observed that “a labor dispute is (not) in active progress, insofar as disqualification for unemployment benefits is concerned, when the employees are exercising their legal right through peaceful negotiation to bargain for what they deem to be better working conditions.” Id at 233. (Emphasis added).
National Gypsum cannot be regarded as controlling in this matter. There the Court was concerned with the conduct of a private employer, against whom Louisiana law affords the right to strike; here, the employer is the federal government, whose appointed representatives are obligated to enforce the laws of this country. Those laws expressly provide that no individual may hold a position in the Govern *1083 ment of the United States if he participates in a strike against the federal government. 5 U.S.C. § 7311. Violation of this provision is punishable as a felony. 18 U.S.C. § 1918. In giving effect to these federal statutes, the F.A.A. cannot be said to have engaged in the sort of economic coercion which the National Gypsum Court disparaged — it cannot be “coercive” for government to compel an individual to do that which the law requires of him. Nor can it be said of these appellants (as it was said of the National Gypsum plaintiffs) that they were “unable to work through no fault of their own”, or that appellants’ unemployment was the result of their exercise of a legal right. In short, whereas the National Gypsum plaintiffs were victims of a lock-out, these appellants were fired for violating federal law.
Claimants nevertheless urge this court to decide this case according to Louisiana law rather than the cited federal statutes. They contend that striking, in itself, is not misconduct, and that the right to strike is specifically protected. La.R.S. 23:841.[4]
Such an argument creates the impression that strikes are always and everywhere protected in Louisiana. This is not an accurate statement of the law, however, for as we held in City of New Orleans v. Police Association of Louisiana, 369 So.2d 188 (La.App. 4th Cir.1979), at least some public employee strikes (for example, those conducted by policemen) are illegal and therefore subject to injunction, notwithstanding La.R.S. 23:841, supra. In other states, every court that has considered the question has decided that, in the absence of a statute governing public employee strikes, public employees have no right to strike or engage in work stoppages. Id. at 188. See also, United Federation of Postal Clerks v. Blount, 325 F.Supp. 879 (D.D.C.1971), aff’d., 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).
But regardless of Louisiana’s treatment of strikes by public employees, we cannot simply ignore the fact that the relationship between the claimants and the F.A.A. was governed by various rules, one of which makes it a felony for employees to participate in a strike. 18 U.S.C. § 1918. Thus, although it is necessary to consult Louisiana law to determine the grounds for disqualification for benefits, we cannot avoid looking to federal law to determine whether those grounds exist in this case.
Concerning the grounds for disqualification, La.R.S. 23:1601(2) provides that an individual shall be disqualified for benefits if he has been discharged for misconduct connected with his employment.
Louisiana courts consistently have defined “misconduct” under La.R.S. 23:1601(2) as “... an act of willful or wanton disregard of the employer’s interest; a deliberate violation of the employer’s rules; or a disregard of standards of behavior which the employer has a right to expect of his employee.” Dorsey v. Administrator, Louisiana Dept. of Employment Security, 353 So.2d 363 (La.App. 1st Cir.1977); Atkins v. Doyal, 274 So.2d 438 (La.App. 1st Cir.1973); Bowman v. State of Louisiana, Office of Employment Security, 403 So.2d 825 (La.App. 2d Cir.1981).
Given the foregoing definition, it cannot be seriously doubted that the term “misconduct” is broad enough to include those acts under consideration. Appellants have deliberately violated an employer’s rule, namely 5 U.S.C. § 7311(3). By providing that such activity is punishable as a felony, Congress undoubtedly meant to impress upon federal employees its view that strikes against the Government constitute a willful disregard of the employer’s interest. Both Congress and the appellants’ direct employer, the F.A.A., had the right to expect that appellants would obey the *1084 laws of this country governing their employment. In a word, appellants have been guilty of “misconduct” in connection with their employment. They are therefore disqualified from receiving unemployment benefits under La.R.S. 23:1601(2).
For the reasons assigned, the judgment of the district court is affirmed.
AFFIRMED.
GARRISON, J., dissents with reasons.

. La.R.S. 23:1601(2) provides, in part:
An individual shall be disqualified for benefits:
[[Image here]]
(2) If the administrator finds that he has been discharged ... for misconduct connected with his employment.

. 5 U.S.C. § 7311 provides:
*1082 An individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—
(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia.

. La.R.S. 23:821 defines the term “labor dispute" as follows:
The term “labor dispute” includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

. La.R.S. 23:841 provides, in part:
No court shall issue any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person or persons from doing, whether singly or in concert, any of the following acts:
(1) Ceasing or refusing to perform any work to remain in any relation of employment regardless of any promise, undertaking, contract or agreement to do such work or to remain in such employment;
[[Image here]]